**Supreme Court**

No. 2013-246-C.A.
(P1/04-3386A)

State                               :

v.                                  :

James Oliveira.                     :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                    :

v.                       :

James Oliveira.          :

Present: Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**     The defendant, James Oliveira (defendant or Oliveira), appeals from a Superior Court judgment of conviction on one count of first-degree child molestation. Oliveira raises two issues on appeal. First, he claims that the forty-five-month delay between the return of the record to the Superior Court after this Court vacated the conviction from Oliveira's first trial and the commencement of his retrial violated his right to a speedy trial. Second, he contends that the trial justice abused his discretion in admitting hearsay evidence. For the reasons set forth below, we affirm the judgment.

### Facts and Travel

In August 2004, Oliveira was living with his daughter, Barbara, her boyfriend, Richard, and their two young sons (defendant's grandsons), six-year-old Phillip and one-year-old Thomas, in a two-bedroom apartment in Pawtucket, Rhode Island.[1] Oliveira, Phillip, and Thomas all shared one of the two bedrooms; Thomas slept in a crib, while Phillip and defendant shared a bed. On the evening of August 11, 2004, Barbara and Richard went grocery shopping, leaving

---

[1] To afford the complainant a measure of privacy, we use fictitious names to identify him and his immediate family.

- 1 -

Phillip and Thomas in Oliveira's care. Shortly after young Phillip went to bed that evening but before he fell asleep, Oliveira came into the bed and began rubbing Phillip's upper thigh. Oliveira then pulled down Phillip's pajama bottoms, and, according to Phillip, he inserted his finger into Phillip's anus. When Phillip told Oliveira to stop because it hurt, defendant complied. Phillip pulled up his underwear and eventually fell asleep.

The next morning, Phillip awoke to the same disturbing touch. He once again told Oliveira to stop, and defendant did so; defendant got out of bed and left for work. Phillip testified that he went into the kitchen to wipe himself with paper towels because his anus felt "weird." Richard observed Phillip's activity and notified Barbara about it. A concerned Barbara summoned Phillip to her room and inquired about his behavior. Phillip responded that he felt like he needed to go to the bathroom, but the bathroom was occupied. Barbara explained to Phillip that this was inappropriate behavior and told him to return to his room. About fifteen to twenty minutes later, Barbara remained perplexed by Phillip's unusual behavior that morning, and she went to his room to speak with him. In response to questioning from his mother, Phillip disclosed that Oliveira had inserted his thumb into Phillip's anus. Barbara called the Pawtucket Police Department.

When then-Pawtucket Police Det. John McIlmail (Det. McIlmail) arrived at the apartment, Barbara explained Phillip's disclosure to her that morning. With police officers present, Barbara called Oliveira at work and persuaded him to return to the apartment. Before Oliveira returned and at Det. McIlmail's urging, Barbara took Phillip to Hasbro Children's Hospital (Hasbro) for an examination. Oliveira was intercepted by Det. McIlmail and a uniformed officer in the parking lot of the apartment complex; Oliveira then accompanied the officers to the police station. After advising Oliveira of his Miranda rights at the station, Det.

McIlmail began questioning defendant about Phillip's allegations. Although he initially denied any impropriety, Oliveira eventually admitted—both orally and in a subsequent written statement—that he inserted his finger into Phillip's anus.

Meanwhile, at Hasbro, Dr. Christine Barron (Dr. Barron), the clinical director for the Child Protection Program at the hospital, met with Barbara and Phillip. After speaking with Barbara, Dr. Barron ordered a forensic-evidence examination for this six-year-old, which included a rectal swab and a rectal smear. Subsequent testing by the Rhode Island Department of Health revealed the presence of seminal fluid in the rectal samples that matched Oliveira's DNA profile. Approximately one month after the events of August 11-12, 2004, in a letter to Barbara, Oliveira expressed remorse for his actions and for hurting his daughter and her family. This letter was later admitted into evidence at defendant's trial.

Oliveira was indicted on two counts of first-degree child molestation, in violation of G.L. 1956 §§ 11-37-8.1 and 11-37-8.2. He was convicted by a jury on count 1.[2] This Court vacated that conviction, concluding that Oliveira's Sixth Amendment right to counsel was violated by the admission at trial of a statement he made during questioning by an agent of the state after his right to counsel had attached. State v. Oliveira, 961 A.2d 299, 309, 311, 319 (R.I. 2008) (Oliveira I). However, we rejected Oliveira's contentions that (1) the trial justice abused his discretion in allowing Barbara to testify about Phillip's disclosures to her; and (2) he had been denied the right to a speedy trial. Id. at 316, 319. We remanded for a new trial, id. at 319, and the record was returned to the Superior Court on January 20, 2009.[3]

---

[2] The jury found Oliveira not guilty on count 2.

[3] Although the Supreme Court docket sheet for State v. Oliveira, 961 A.2d 299 (R.I. 2008) (Oliveira I), indicates that the record was returned to the Superior Court on January 20, 2009, the Superior Court docket sheet reflects that the record was returned on February 3, 2009. Resolving

Because the travel of this case as it relates to the speedy-trial issue is factually driven and complex, we recite in detail the events that transpired after January 20, 2009. On March 12, 2009, during a hearing on Oliveira's motion to reduce bail, at which Oliveira was represented by Assistant Public Defender John P. Cotoia (Cotoia)—who also represented defendant in the first trial—the state indicated that it could be ready to commence defendant's retrial as early as May 2009. On April 8, 2009, Cotoia filed a motion for a speedy trial on Oliveira's behalf. However, as of May 21, 2009, the date the speedy-trial motion was heard, the defense was not ready for trial. Cotoia made it clear that he filed the motion solely to appease his client; he informed the hearing justice that he was not ready for trial and would not be ready until the fall of 2009, at the earliest. Cotoia explained:

> "My client requested a motion for a speedy trial. I did so at his request. I indicated to Mr. Oliveira and indicated to [the prosecutor] that the case, if it does go to trial, which it probably will again, I will not be ready until sometime in the fall. I indicated to Mr. Oliveira that proviso. I indicated to him that if he wants to push it quicker, I'm unable to do so. I just needed to put that on the record. He indicated to me he does want me to represent him since I represented him at the first trial. I don't want the issue to develop down the line as to when the exact dates will be for -- when I will be ready."

The Superior Court hearing justice[4] then inquired of Oliveira whether he was "comfortable slowing this down a little bit so [Cotoia] can adequately investigate." Oliveira responded, "Yes, sir, as long as it does not continue like the last time." The hearing justice aptly captured the

this discrepancy in Oliveira's favor, we assume for the purposes of our analysis that the Supreme Court docket sheet accurately reflects the record return date.

[4] To distinguish between the several Superior Court justices and magistrate judges who presided over the hearings relating to Oliveira's several pretrial motions and the Superior Court justice who presided over defendant's retrial, we refer to each judicial officer who presided over the relevant pretrial hearings as "the hearing justice" and the justice who presided over Oliveira's retrial as "the trial justice."

- 4 -

dilemma caused by defendant's premature speedy-trial motion: "The [c]ourt is certainly inclined to move this along but let's not go so fast as to overlook some things that need to be looked at." The hearing justice therefore denied Oliveira's speedy-trial motion without prejudice. The speedy-trial motion never was renewed. It was not until September 22, 2009 that Cotoia moved for discovery of evidence relating to DNA testing. The state provided the information on April 12, 2010.

On June 7, 2010, Oliveira filed a bevy of pro se motions, several of which asserted a violation of defendant's constitutional right to a speedy trial. During the hearing on these motions on July 6, 2010, Cotoia set forth the reasons why he was not ready to proceed to trial on this case. According to Cotoia, since he last spoke with Oliveira in April 2010, all of his time was occupied by two capital cases that had recently been resolved in Superior Court. Cotoia further proffered that, as was the case in May 2009, his current caseload was staggering, consisting of between ninety and one hundred cases. He indicated his belief that, during the hearing on Oliveira's speedy-trial motion, "there was an agreement [with his client] not to go forward [at] that time." Nonetheless, Cotoia assured Oliveira and the hearing justice that Oliveira's case was now his "top priority." He also explained why his pretrial efforts relating to the DNA evidence against defendant, which he averred were somewhat time-consuming, were in Oliveira's best interest. Cotoia represented that he would likely be ready for trial in October 2010. For its part, the state represented that it was ready for trial as of the date of the hearing. The hearing justice suggested to Oliveira that it would not be in his best interest to proceed to trial until his attorney was fully prepared. The hearing justice also noted the additional time that would be required to bring a new attorney up to speed on Oliveira's case. In response to Oliveira's concerns that he was unable to reach Cotoia, the hearing justice explained that Cotoia

was in court each morning until the afternoon and that, because this case was now Cotoia's top priority, communication between Oliveira and Cotoia likely would be more frequent. The motions were passed, and the case was scheduled for a trial calendar call in October 2010. The hearing justice emphasized to Oliveira the importance of filing his motions through his appointed counsel.

Undaunted, less than a month later, Oliveira filed another batch of pro se motions on August 5, 2010, which included a motion that sought to discharge Cotoia and obtain new counsel. A hearing was held on September 10, 2010, but Cotoia was unable to attend; another attorney from the Office of the Public Defender appeared in his stead. The hearing justice was reluctant to decide the motion in Cotoia's absence and therefore deferred ruling on Oliveira's motion and directed counsel to instruct Cotoia to meet with his client.[5] The hearing justice also informed Oliveira that his case was still on the trial calendar for October 2010.

A three-month period elapsed when, on December 21, 2010, Oliveira filed a pro se motion seeking recusal of the hearing justice who presided over the September 10, 2010 hearing because of his failure to consider defendant's pro se motions.[6] A hearing was held on this motion on January 31, 2011.[7] Cotoia again was not in attendance, but he requested, through his proxy, a one-week continuance so that he could file a motion relating to Oliveira's case.

---

[5] Although the docket indicates that the motion was denied at the hearing, the transcript of the hearing does not appear so decisive. In any event, it is clear that the motion to discharge Cotoia was not granted.

[6] In that motion, Oliveira stated that he had filed a disciplinary complaint against Cotoia.

[7] Meanwhile, on January 26, 2011, Oliveira filed a petition for writ of habeas corpus in federal court alleging violation of his right to a speedy trial. His habeas petition was dismissed because his speedy-trial claim was unexhausted for habeas purposes. See Oliveira v. Wall, C.A. No. 11-024 ML, 2011 WL 2415343, at *2 (D.R.I. May 12, 2011), report & recommendation adopted, 2011 WL 2415342 (D.R.I. June 13, 2011).

Because the hearing justice saw no merit to Oliveira's pro se recusal motion, it was denied. A little over one week later, on February 11, 2011, Cotoia moved to withdraw. The motion was granted on February 16, 2011; a new attorney, Steven T. Morrissey (Morrissey), entered his appearance the next day. At no point in his representation did Morrissey move for a speedy trial, nor did he move to dismiss the indictment for violation of defendant's right to a speedy trial. The defendant does not appear to challenge the period of delay from the date that Morrissey entered his appearance to the commencement of his retrial on October 23, 2012.

At defendant's retrial, the state presented the testimony of several witnesses, including Phillip, who was then fifteen years old, Barbara, Det. McIlmail, and Dr. Barron. Phillip told the jury that, before the August 2004 sexual abuse, he had a good relationship with his grandfather. He also testified about Oliveira's conduct and, without objection, what he disclosed to his mother. In addition, the state also elicited, over defendant's objection, testimony from Barbara, Det. McIlmail, and Dr. Barron about Phillip's disclosures to his mother on August 12, 2004.

Because Oliveira claims on appeal that the trial justice abused his discretion in admitting that evidence, we recount the relevant testimony in some detail. Barbara testified that, when she first spoke to Phillip after he wiped himself in the kitchen, he looked "nervous" and "afraid" and was acting "standoffish" and "not typical." Barbara also testified that, when she went to Phillip's room fifteen to twenty minutes later, "he was just so quiet," which was not normal. She then testified as follows:

> "I just went up to him and I said, you know, [Phillip], something is -- I don't think with your behind, you have to tell mom, you know something hurts, or, you know if something is going on, anything, if anyone is touching you, you have to tell mom anything no matter what it is; you are not going to be in trouble. You know, mommy is not going to be mad at you but if you, if anything is going on with your bum you have to tell me."

When Barbara was asked what Phillip said in response, defendant objected on hearsay grounds. The trial justice overruled the objection at a sidebar conference, explaining that, because Barbara had described Phillip as nervous, afraid, standoffish, and not acting normally, Phillip's statement qualified as an excited utterance. See Rule 803(2) of the Rhode Island Rules of Evidence. Barbara then testified that, after Phillip first expressed concern that Barbara was "going to be mad at grandpa," he told her that Oliveira rubbed Phillip's leg, pulled down Phillip's underwear, and inserted his thumb into Phillip's anus.

Phillip's disclosure to Barbara was also recounted by Det. McIlmail and Dr. Barron. Detective McIlmail testified, over defendant's objection, that, through conversations with Barbara and the responding officer, he learned that "[Phillip] had disclosed to his mother that in the prior evening his grandfather James Oliveira had been in bed with him, rubbed his leg, pull[ed] his underpants down[,] and inserted his finger into his anus." He also testified, again over defendant's objection, that Barbara informed him that Phillip complained of pain to her. Finally, Dr. Barron testified, over defendant's objection, as follows:

> "The mother reported to me that [Phillip] had been baby-sat the night before by his grandfather. That, he had gone to the bathroom in the morning after she found him curled up like a ball under his covers, got up, went and used the bathroom, came down to the kitchen and actually pulled down his pants and underwear and was attempting to wipe his bottom with [a] paper towel. She asked him what he was doing and he disclosed sexual abuse by his grandfather that occurred the night before."

The jury found Oliveira guilty of first-degree child molestation, and the trial justice sentenced him to life imprisonment.[8] Oliveira timely appealed.

---

[8] Oliveira is a recidivist child molester.

**Analysis**

**Speedy Trial**

Oliveira's principal contention on appeal is that the forty-five-month delay between the return of the record to the Superior Court after <u>Oliveira I</u> and the commencement of his retrial violated his right to a speedy trial. We review this claim <u>de novo</u>. See <u>Oliveira I</u>, 961 A.2d at 317. Under the Sixth Amendment to the United States Constitution and article 1, section 10 of the Rhode Island Constitution, a criminal defendant is entitled to a speedy trial. See <u>Bido v. State</u>, 56 A.3d 104, 111 (R.I. 2012). "The speedy-trial right is 'amorphous,' 'slippery,' and 'necessarily relative,'" and "[i]t is 'consistent with delays and depend[ent] upon circumstances.'" <u>Vermont v. Brillon</u>, 556 U.S. 81, 89 (2009) (quoting <u>Barker v. Wingo</u>, 407 U.S. 514, 522 (1972)). In assessing a speedy-trial claim, this Court employs the familiar four-factor framework set forth by the United States Supreme Court in <u>Barker</u>: "(1) the length of the delay, (2) the reason for delay, (3) the defendant's assertion of his [or her] rights, and (4) the prejudice to the accused." <u>Bido</u>, 56 A.3d at 111 (quoting <u>State v. Crocker</u>, 767 A.2d 88, 91 (R.I. 2001)). We consider all four factors, with no single one accorded dispositive weight. <u>Id.</u> The governing framework "necessarily compels courts to approach speedy[-]trial cases on an <u>ad hoc</u> basis." <u>Brillon</u>, 556 U.S. at 91 (quoting <u>Barker</u>, 407 U.S. at 530).

**1. Length of Delay**

The first factor—the length of delay—serves a gatekeeping function, separating cases involving delay that is lengthy enough to be considered "presumptively prejudicial," for which review of the remaining <u>Barker</u> factors is necessary, from those involving a shorter period of delay, for which no further analysis is needed. <u>Bido</u>, 56 A.3d at 111. As the state concedes, the forty-five-month delay in this case qualifies as "presumptively prejudicial" under our precedent.

See id. ("[T]he line that demarks the 'presumptively prejudicial' boundary may be drawn at twelve months." (quoting State v. Powers, 643 A.2d 827, 831 (R.I. 1994))). Therefore, consideration of the remaining factors is required. We pause to note, however, that, although the delay in this case is "presumptively prejudicial," "[t]he passage of time, standing alone, does not justify a holding that the guarantee to a speedy trial has been violated." Powers, 643 A.2d at 833 (quoting State v. Rollins, 113 R.I. 280, 284, 320 A.2d 103, 106 (1974)).

## 2. Reason for Delay

The second factor—the reason for the delay—calls for an assessment of the relative "culpability of the parties in causing the delay." Bido, 56 A.3d at 112 (quoting State v. Austin, 731 A.2d 678, 684 (R.I. 1999)); see also Brillon, 556 U.S. at 90 ("[I]n applying Barker, we have asked 'whether the government or the criminal defendant is more to blame for th[e] delay.'" (quoting Doggett v. United States, 505 U.S. 647, 651 (1992))). Because "pretrial delay is often both inevitable and wholly justifiable," Bido, 56 A.3d at 112 (quoting Doggett, 505 U.S. at 656), different weights are assigned to different reasons in the ad hoc speedy-trial analysis, see Barker, 407 U.S. at 531. Intentional delay undertaken to gain an advantage over the defendant weighs heavily against the state, while the state can be blameless for delay that might be occasioned by a valid reason. See Bido, 56 A.3d at 112. Delay caused by the state's negligence lies in the middle of the culpability spectrum; and, "[a]lthough negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." Id. (quoting Doggett, 505 U.S. at 657). At the same time, delay caused by the defense, whether the result of action or inaction, is attributable to the defendant in the speedy-trial analysis. See Brillon, 556 U.S. at 90; Bido, 56 A.3d at 112. In performing this analysis, we

are mindful that we are not assessing blame on the state's defense bar or court-appointed counsel; nonetheless, a speedy-trial analysis requires us to allocate the reasons for the delay to one side or the other.

It is an inescapable conclusion that the controlling reason for the delay during Cotoia's tenure in this case—from the time the record was returned to the Superior Court on January 20, 2009 until February 17, 2011, when Morrissey entered his appearance for Oliveira—was that the defense was not ready for trial. At the outset, we note the absence of any transcripts or a developed evidentiary record that may have shed more light on the reasons for delay. Apart from two instances when the prosecutor was unavailable, two instances when Cotoia was unavailable, and one instance, in November 2009, when the case was continued for "consideration of disposition," the docket reflects that the case was continued, in open court, on several occasions "pending further investigation"; no explanation for these continuances is given, nor has a transcript been provided. However, there is no mystery behind the dearth of record evidence: Neither of Oliveira's defense counsel pressed a speedy-trial motion at any time, and no effort was made to develop an evidentiary record. Additionally, certain critical facts about the reasons for the delay emerge from the limited record in this case: Cotoia was not ready for trial at any point after the remand in early 2009 until he withdrew as counsel in February 2011, and the state was ready for trial for much of this time period. As early as March 2009, the state represented that it could be ready for trial in two months' time. When Cotoia suggested in May 2009 that he might be ready for trial in the fall of 2009, the state indicated that it had no objection to a fall trial date. The record is unclear concerning the precise point in time at which the state was ready for trial, but it is clear that, at least by the July 2010 hearing on Oliveira's first round of pro se filings, the state was ready to proceed.

Although this Court cautioned in Powers, 643 A.2d at 831—a case involving a delay of nearly eleven years—that "[t]he state is 'not entitled to sit back and rely on its pro forma notice of readiness [for trial],'" but "owe[s] the additional duty of monitoring the case and pressing the court for a reasonably prompt trial," id. at 832 (quoting United States v. Vispi, 545 F.2d 328, 334 (2nd Cir. 1976)), it is clear that the state in this case was not resting on pro forma notices of readiness, but expressed genuine concern about the danger of commencing trial before defense counsel was ready. In May 2009, when the hearing justice articulated his concern that Oliveira's desire for a prompt trial might result in an unprepared defense attorney proceeding to trial, the state indicated it had no objection to a trial in the fall of 2009. In July 2010, after another hearing justice once again advised Oliveira that it would be in his best interest to not proceed to trial before his attorney was prepared, the state once again expressed concern about rushing Cotoia and indicated that it stood ready for trial whenever Cotoia was ready. There is no suggestion in this record that the state's representations of readiness for trial were in any way disingenuous.

In marked contrast to the state's timely and unwavering readiness for trial, Cotoia remained unprepared for trial for much (and perhaps the entirety) of the period between January 2009 and February 2011. At the May 2009 hearing on the speedy-trial motion that Cotoia filed, he explained that he would not be ready for trial until the fall of 2009. However, he did not move for discovery of the DNA evidence until late September 2009. By July 2010, Cotoia was still not ready for trial, and he indicated then that he could not be ready until October 2010.[9]

---

[9] In explaining why he would not be ready for trial until October 2010, Cotoia explained that July was "a difficult time of year" because he was court excused the following week and for the last week in July and the first week in August. Cotoia indicated that he would visit his client when he returned from his vacation.

Critically, there is no indication that Cotoia was prepared for trial when he moved to withdraw in February 2011. Therefore, although the record does not indicate the precise reason that any of the several continuances were granted, Cotoia's unpreparedness, when juxtaposed with the state's early readiness for trial, leaves little doubt that Cotoia's failure to prepare for trial precluded a speedier disposition of the charges pending against Oliveira. This delay is attributable to Oliveira in the speedy-trial analysis. See Brillon, 556 U.S. at 92 ("An assigned counsel's failure 'to move the case forward' does not warrant attribution of delay to the State."); id. at 94 ("[D]elays caused by defense counsel are properly attributed to the defendant, even where counsel is assigned.").[10]

Before this Court, Oliveira seeks to disassociate himself from his defense attorney and strenuously challenges the suggestion by the state that he is responsible for delays caused by Cotoia. To support his position, he relies on the following passage from Oliveira I, 961 A.2d at 318: "[T]he defendant bears responsibility for defense counsel's scheduling conflicts and requests for continuances when the defendant never moves to substitute counsel or dismiss the indictment prior to trial, and each continuance is granted in accordance with the legitimate needs of competent counsel." He contends that, after the remand, he did precisely what this Court faulted him for not doing in Oliveira I, such that the delay cannot be attributed to him. We reject this contention.

For starters, during the May 2009 hearing on the speedy-trial motion that Cotoia filed, Oliveira agreed to allow Cotoia time to adequately prepare for the retrial. It appears that the first action taken by Oliveira to indicate that he was no longer comfortable with Cotoia's trial-

---

[10] Oliveira does not contend—and there is no evidentiary basis for the position—that Cotoia's failure to prepare for trial stemmed "from a systemic 'breakdown in the public defender system.'" Vermont v. Brillon, 556 U.S. 81, 94 (2009) (quoting State v. Brillon, 955 A.2d 1108, 1111 (Vt. 2008), rev'd, 556 U.S. 81 (2009)).

preparation efforts occurred in June 2010, when he launched his first salvo of pro se motions, some of which purported to assert that he had been denied his right to a speedy trial. Thus, a period of seventeen months of the forty-five months complained of is properly attributed to Oliveira because the delay was caused by his attorney, who was not ready for trial. See Brillon, 556 U.S. at 92, 94.

Secondly, when Oliveira filed his June 2010 pro se motions, he was still represented by Cotoia. At this point, scheduling matters rested with defense counsel, and Oliveira was bound by those decisions. A decision of the United States Supreme Court in an analogous context is instructive on this point. In New York v. Hill, 528 U.S. 110, 111-12 (2000), a case involving the period in which a criminal defendant must be tried pursuant to the Interstate Agreement on Detainers (IAD), the clock began to run when the defendant requested disposition of the charges pending against him. Before the period had run, defense counsel agreed to a trial date beyond the time constraints in the IAD. See id. at 112-13. The defendant argued that the failure to commence his trial within the requisite time period necessitated dismissal of the indictment. See id. at 113. The Supreme Court rejected this contention, holding that the defendant had waived any argument as to the exclusion of the period between when his counsel agreed on the trial date and the commencement of his trial because "[s]cheduling matters are plainly among those for which agreement by counsel generally controls." Id. at 115. The Hill Court explained that "only counsel is in a position to assess the benefit or detriment of [a particular period of] delay to the defendant's case. Likewise, only counsel is in a position to assess whether the defense would even be prepared to proceed any earlier." Id.

Similarly, we flatly reject the argument that Oliveira is not responsible for delay caused by Cotoia because he filed pro se motions asserting his speedy-trial rights at the same time that

his lawyer was not ready for trial. A defendant may not divorce himself from delay caused by his counsel by demanding a prompt trial through unauthorized pro se motions while simultaneously retaining the benefits of representation by counsel in other facets of the case. As we explained in State v. Austin, 462 A.2d 359, 362 (R.I. 1983), in the course of attributing delays caused by defense counsel to the defendant for speedy-trial purposes, "when an attorney-client relationship exists, the client may not pick and choose which of his attorney's actions shall bind him." In this case, it is undisputed that an attorney-client relationship existed between Oliveira and Cotoia at the time he filed his pro se speedy-trial motions in June 2010 and that his attorney was not prepared for trial at the time he filed these motions. Cotoia explained at the hearing on those motions that he had recently been engaged in two capital cases and, consequently, was not prepared for trial in Oliveira's case. Cotoia indicated that he would not be prepared for trial until October 2010, and only he was "in a position to assess whether the defense would even be prepared to proceed any earlier." Hill, 528 U.S. at 115. Upon learning of Cotoia's status, Oliveira did not move for appointment of new counsel, and the hearing justice continued the matter in accordance with Cotoia's legitimate pretrial preparation needs. See Oliveira I, 961 A.2d at 318. Because Oliveira was bound by his defense counsel's decisions on scheduling matters, see Hill, 528 U.S. at 115, this delay is properly attributed to Oliveira in the speedy-trial analysis, at least until he filed his motion to discharge counsel and for appointment of new counsel in August 2010, see Brillon, 556 U.S. at 92, 94.

After almost nineteen months had elapsed since the record was returned to the Superior Court, Oliveira launched his second salvo of pro se motions, including a motion to discharge counsel and for appointment of new counsel. In due course, a hearing was scheduled on this motion in September 2010; Cotoia was not present, and the hearing justice was reluctant to

- 15 -

decide the motion without first hearing from Cotoia. The hearing justice therefore deferred ruling on the motion and directed that Cotoia meet with his client. The case remained scheduled for trial on the October 2010 trial calendar. The hearing justice's reluctance to decide the motion without the benefit of Cotoia's input was eminently reasonable, and he wisely elected to defer ruling on the motion "until [he was] able to get to the bottom of this."

The next activity reflected in the docket is a filing on December 21, 2010 in which Oliveira moved to recuse the hearing justice for failure to take up his pro se motions. More time elapsed because of this filing. Oliveira twice appeared in court on this motion: once on January 24, 2011, when the motion was continued, "pending further investigation," and once again on January 31, 2011 for a hearing on the motion.[11] On the latter date, Cotoia was absent once again, but he requested a one-week continuance in which to file a motion in Oliveira's case.[12] On February 11, 2011, Cotoia filed a motion to withdraw. That motion was granted, and Morrissey entered his appearance on February 17, 2011.

Although more than six months elapsed between the filing of Oliveira's motion to discharge Cotoia and his eventual withdrawal from the case, the state bears little, if any, responsibility for that period of delay. Hearings were held in a reasonably prompt fashion on both the motion for new counsel and the motion to recuse the hearing justice. Cotoia was not available, and the decisions of two hearing justices to allow Cotoia to weigh in on both motions were not unreasonable. Much of the six-month delay between August 5, 2010 and February 17, 2011 was the more than three months between the hearing on Oliveira's motion for new counsel on September 10, 2010 and the filing of the motion to recuse on December 21, 2010. The record

---

[11] Considering the time of year when Oliveira filed his motion, the lag time between the filing of the motion and its consideration by the hearing justice was not unreasonable.

[12] The hearing justice denied the motion to recuse as meritless.

- 16 -

is silent as to what, if anything, transpired during this three-month window. There is no indication that the state was not ready for trial, as it had been since at least July 2010. Although in the typical speedy-trial case an unexplained period of delay could be attributed to the state, we are reluctant to do so where defendant failed to develop a record showing periods of delays that truly are unexplainable and his counsel did not appear in court with his client after July 6, 2010 until he withdrew in February 2011.

Finally, an additional twenty months elapsed between Morrissey's entry of appearance and the commencement of trial. We readily acknowledge that this is a lengthy period of time and a cause for concern. However, save for including this time period in the calculation of the total period of delay, Oliveira does not appear to attack—or in any way address—the delay occurring during Morrissey's tenure. Because Morrissey elected not to assert Oliveira's speedy-trial rights, there is no indication in the record that Morrissey was ready for trial during this time. He was, however, busy protecting his client's right to a fair trial as an experienced defense attorney and respected member of the bar. The docket reveals that Morrissey filed numerous motions on Oliveira's behalf during this time. He filed a motion for further discovery on February 28, 2011; the state provided its response to this motion on March 22, 2011. The case was then continued, "pending further investigation," on three occasions before it was passed for trial on November 17, 2011; the trial date was vacated the next day.[13] In mid-December 2011, Morrissey filed a pretrial motion to suppress and a motion in limine. After December 2011, the docket reflects no activity until July 25, 2012, when the case again was passed for trial. Oliveira's trial began in October 2012.

---

[13] We have not been provided with an explanation for this action.

Significantly, Morrissey stated on the record before trial that he had been engaged in plea negotiations of unspecified duration, and defendant conceded at oral argument before this Court that plea negotiations occurred in this case. Although little can be gleaned from the information in the docket, it appears that Morrissey was preparing for trial at least until December 2011, when he filed the motion to suppress and a motion in limine. Cf. State v. Delahunt, 121 R.I. 565, 575, 401 A.2d 1261, 1267 (1979) (remarking, when commenting on the defendant's motion to suppress identification testimony that was filed after the defendant filed two motions for speedy trial, that the "[f]ailure to complete such a basic step in trial preparation suggests that [the] defendant was not ready for trial during most of the period between indictment and trial[;] [t]hus, such procrastination dilutes the vitality of [the] defendant's prior motions concerning speedy-trial rights"). At the same time, there is no indication that the state was not ready for trial during the twenty-month period from February 2011 to October 2012; indeed, the record indicates that the state was ready in July 2010, and there is no evidence that the state ever wavered in its readiness for trial.[14] At least some of the twenty months that transpired during Morrissey's tenure as defense counsel are properly attributed to Oliveira. See Brillon, 556 U.S. at 92, 94.

In sum, although we do not embrace the delay in this case with approval, we nonetheless conclude that much of it was caused by Cotoia's unpreparedness, and at least some of the delay that occurred during Morrissey's tenure—which Oliveira does not appear to challenge—arose from his reasonable trial-preparation and plea-negotiation efforts. The delay caused by Cotoia and Morrissey is attributable to Oliveira. The state was ready for trial during much of that time period. Therefore, in the course of determining who is "more to blame," Brillon, 556 U.S. at 90

---

[14] The two instances in which the case was continued because the prosecutor was unavailable occurred in January and May 2010.

(quoting Doggett, 505 U.S. at 651), we must conclude that Oliveira bears the brunt of the responsibility for the delay.  Therefore, the second Barker factor weighs against him.

### 3.    Assertion of the Right

When assessing the third Barker factor—a defendant's assertion of the right to a speedy trial—we search the record "for actions sufficiently aggressive to constitute the equivalent of 'banging on the courthouse doors.'"  Bido, 56 A.3d at 114 (quoting Crocker, 767 A.2d at 94).  Oliveira asserts that his "vigorous" efforts in this regard require that the third Barker factor be "weigh[ed] heavily in his favor."  We disagree.

At the outset, we note that Oliveira's first "assertion" of his speedy-trial right—the motion filed by Cotoia in April 2009—is entitled to no weight in the analysis.  At the hearing on this motion, Cotoia explained that he had filed the motion solely to accommodate Oliveira's request and that he was not ready for trial and would not be ready until the fall of 2009.  A premature speedy-trial motion filed long before defendant is ready for trial does not constitute sufficient assertion of the right to a speedy trial.  It is a nullity.  See State v. Perez, 882 A.2d 574, 592 (R.I. 2005) (noting, in the course of weighing the third Barker factor against the defendant, that the defendant conceded "that he was unprepared to proceed to trial" at the time that the speedy-trial motion was filed); cf. Delahunt, 121 R.I. at 575, 401 A.2d at 1267 (holding that two motions for speedy trial did not constitute sufficient assertion of the right where the motions were followed by a motion to suppress identification testimony); Ramsdell v. Langlois, 100 R.I. 468, 473, 217 A.2d 83, 86 (1966) ("It would seem that appellant is not entitled to blow both hot and cold—to seek dismissal based upon delay in trial, on the one hand; while at the same time, requesting and insisting upon further continuance or postponement of the trial." (quoting State v. Thompson, 232 P.2d 87, 92 (Wash. 1951))).  Moreover, at the same hearing, Oliveira acquiesced

in the delay necessary to allow Cotoia to prepare for trial; when asked by the hearing justice whether he was "comfortable slowing this down a little bit so [Cotoia] can adequately investigate," Oliveira agreed, although his acquiescence was somewhat qualified in nature. Therefore, not only was the April 2009 speedy-trial motion filed before Cotoia was ready for trial, both Cotoia and Oliveira effectively abandoned the motion during the hearing on May 21, 2009. Because the premature motion properly was denied, it does not approach a sufficiently aggressive assertion of Oliveira's right to a speedy trial.

The pro se motions that Oliveira filed in June 2010 that purport to assert his speedy-trial rights come no closer to banging on the courthouse doors. For one thing, the hearing justice appropriately passed those motions because they were filed while Oliveira was represented by counsel. Cf. United States v. Long, 597 F.3d 720, 729 (5th Cir. 2010) (holding that the defendant waived his right to dismissal under the Speedy Trial Act, even though he filed a pro se motion to dismiss, because he was represented by counsel, and the trial judge properly struck the pro se motion). A criminal defendant has no right to "hybrid representation," whereby some tasks are performed by counsel and others by the defendant on a pro se basis. See State v. Brown, 549 A.2d 1373, 1379 (R.I. 1988) ("A criminal defendant cannot claim his right to counsel and assert the right to represent himself in the same trial.").

Moreover, even if we were to address Oliveira's pro se motions, such filings would not constitute sufficient assertion of Oliveira's right to a speedy trial. Even more problematic than the seventeen-month delay in the assertion of the right, the series of pro se motions that Oliveira filed in June and August 2010 hardly were limited to his speedy-trial rights. Oliveira also filed motions seeking relief ranging from expungement of dismissed or acquitted charges, to reconsideration of bail, to production of various items of evidence. By bundling a wide variety

- 20 -

of pro se filings, Oliveira clouded the focus of the relief he sought, and this, in turn, diminished the force of the assertion of his rights. See Ramsdell, 100 R.I. at 472, 217 A.2d at 86 ("[W]hile the court was awaiting a report of the psychiatric evaluation ordered at [petitioner's] request, petitioner simultaneously questioned the indictment, requested information to assist him in the preparation for trial, and demanded a speedy trial. The inconsistencies which inhered in the various requests and demands belatedly made by petitioner gave clear warrant to the trial justice to conclude that petitioner intended that action on his demand for a trial be deferred until after a disposition was made of the other matters.").

Additionally, it is significant that Morrissey did not seek to dismiss the indictment on speedy-trial grounds (or otherwise assert those rights) from the time he entered his appearance in February 2011 to the commencement of defendant's retrial in October 2012. Similarly, after his pro se motions relating to his speedy-trial rights were denied in July 2010, there is no indication that Oliveira again asserted those rights in the more than two years that elapsed before his retrial.[15] The failure to reiterate a speedy-trial demand for more than two years does not constitute sufficient assertion of the right. Cf. State v. Hernandez, 641 A.2d 62, 68 (R.I. 1994) ("Hernandez asserted her constitutional right once in the two-year period. This assertion occurred very early in the proceedings, in fact one month after the information was filed. She

---

[15] In reaching this conclusion, we do not overlook Oliveira's premature pro se habeas petition that he filed in federal court in January 2011. However, assuming, without deciding, that the pretrial filing of a habeas petition in federal court by a defendant awaiting trial on state charges can even constitute an assertion of the right to a speedy trial under Barker's third factor, this ineffectual filing is entitled to scant weight in the analysis in this case because Morrissey's subsequent actions, including the filing of several pretrial motions, indicate that the defense was not ready for trial in January 2011. See Hakeem v. Beyer, 990 F.2d 750, 765 (3d Cir. 1993) ("[W]e think the weight to be given Hakeem's December petition in the federal court is reduced by his apparent unreadiness to proceed to trial at any of the times he asserted the right. Where, through contrary actions, a defendant evidences an unwillingness to commence with the trial requested, the request carries minimal weight."); see also State v. Delahunt, 121 R.I. 565, 575, 401 A.2d 1261, 1267 (1979).

did not bring her motion to dismiss until the first day of trial, some twenty-two months after first asserting her right. We believe Hernandez could have been more aggressive in asserting her right. The record reflects that she only 'tapped lightly' on the courthouse doors."); Austin, 462 A.2d at 363 ("The facts that [the] defendant never made a written demand and that over three years elapsed between [the] defendant's initial oral request for a speedy trial and any further demands clearly demonstrate a lack of effort on [the] defendant's part in asserting his right.").

For these reasons, we conclude that the third Barker factor does not weigh in Oliveira's favor. "The lack of aggressive demand for a speedy trial does not alone constitute a waiver, but it is an important factor that militates against [the] defendant's position, particularly when [the] defendant is at least partially responsible for the delay." Austin, 462 A.2d at 363.

### 4. Prejudice

Finally, this Court turns to the fourth Barker factor: prejudice to the defendant. A defendant's right to a speedy trial seeks to combat three general types of prejudice: "oppressive pretrial incarceration, anxiety and concern of the defendant, and impairment of the ability to present a defense." Bido, 56 A.3d at 115 (quoting Oliveira I, 961 A.2d at 319). Of the three, prejudice arising from the impairment of the ability to present a defense is the most concerning "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id. (quoting Oliveira I, 961 A.2d at 319). Although marshaling "affirmative proof of particularized prejudice" would strengthen a defendant's speedy-trial argument, such an undertaking "'is not essential to every speedy[-]trial claim' 'because excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.'" Id. (quoting Doggett, 505 U.S. at 655).

In this case, Oliveira does not contend—nor is there any suggestion in the record—that the delay impaired his ability to present a defense. Indeed, defendant conceded in his reply brief that the evidence adduced at defendant's retrial was the same evidence admitted during his first trial, with the lone exclusion of the evidence that this Court deemed to be improperly admitted in Oliveira I. Although Oliveira claims to have suffered the other two types of prejudice identified in Barker, we are not persuaded. First, with respect to anxiety and concern resulting from the delay, Oliveira asserts, without any evidentiary support, that the delay "[u]ndoubtedly * * * caused him enormous anxiety and emotional strain" and "had to have been * * * extremely frustrating and stressful." But "[m]ere allegations of mental trauma without more are insufficient to prove prejudice." Austin, 731 A.2d at 685. Because there was no motion to dismiss filed or heard in this case, Oliveira failed to develop a sufficient evidentiary record on this type of prejudice. Finally, even though Oliveira remained incarcerated awaiting retrial, this circumstance does not weigh heavily in his favor. See Oliveira I, 961 A.2d at 319 ("[T]o the extent that incarceration disrupts one's freedom, employment, and familial associations, * * * this disruption merely constitutes a prejudice inherent in being held while awaiting trial and is insufficient alone to satisfy the fourth and final Barker factor." (quoting Perez, 882 A.2d at 592)). Therefore, the fourth Barker factor does not weigh in Oliveira's favor.

* * *

In sum, although the delay of forty-five months in this case was "presumptively prejudicial," triggering a full-fledged Barker analysis, the remaining speedy-trial factors weigh against Oliveira. The primary reasons for the delay—Cotoia's unpreparedness for trial and Morrissey's reasonable trial-preparation efforts—are properly attributed to Oliveira. Additionally, because (1) both attorneys failed to assert defendant's speedy-trial rights,

- 23 -

(2) Oliveira acquiesced in the first seventeen months of the delay caused by Cotoia, and (3) neither Morrissey nor Oliveira asserted Oliveira's speedy-trial rights in the period after Morrissey entered his appearance, we are of the opinion that Oliveira failed to assert his right to a speedy trial with sufficient persistence. Finally, apart from the prejudice inherent in pretrial incarceration, Oliveira has failed to demonstrate prejudice. Under these circumstances, we are satisfied that Oliveira's right to a speedy trial was not violated.

**Hearsay**

Oliveira also claims that the trial justice abused his discretion in admitting hearsay evidence during the testimony of Barbara, Det. McIlmail, and Dr. Barron. Because the determination of whether a statement qualifies for admission under an exception to the hearsay rule is a matter "within the sound discretion of the trial justice," this Court will affirm such a determination "unless clearly erroneous." Oliveira I, 961 A.2d at 314 (quoting State v. Bergevine, 942 A.2d 974, 978 (R.I. 2008)); see also State v. Pompey, 934 A.2d 210, 215 (R.I. 2007).

It is hornbook law that hearsay evidence amounting to an out-of-court statement "offered in evidence to prove the truth of the matter asserted," Rule 801(c) of the Rhode Island Rules of Evidence, is generally inadmissible, unless a recognized exception applies, see Rule 802 of the Rhode Island Rules of Evidence. Another foundational premise is that an out-of-court statement that is not offered for the truth of the matter asserted but for some other purpose—such as to show notice or the effect of the statement upon the listener—is not hearsay. See State v. Diefenderfer, 970 A.2d 12, 32 (R.I. 2009); State v. Crow, 871 A.2d 930, 936 (R.I. 2005).

Detective McIlmail began his testimony by explaining how he became involved in this case. He testified that, upon arriving at Barbara's apartment, he spoke with Barbara and the

officer on scene in order to familiarize himself with the case. He was then asked the following question: "And upon speaking with [Barbara] and the officer on scene what did you learn with regards to the allegations?" The defendant objected, and the trial justice overruled the objection and told Det. McIlmail, "You can answer that as to what [you] learned." Detective McIlmail answered: "[Phillip] had disclosed to his mother that in the prior evening his grandfather James Oliveira had been in bed with him, rubbed his leg, pull[ed] his underpants down and inserted his finger into his anus." Detective McIlmail then described his next steps after learning of Oliveira's actions, including ordering photographs of the crime scene, requesting Barbara to convince Oliveira to return to the apartment, and suggesting that Barbara take Phillip to Hasbro for examination. When Det. McIlmail was asked why he suggested that Phillip be taken to Hasbro, the following exchange took place:

> "A. Because he complained of pain to his behind as well as the way he was acting, his demeanor and his lack of verbal communication, I was concerned that he had been sexually molested and I wanted him physically examined.
> "Q. Now you say that he was complaining in the period that you spent with the family including [Phillip], was he complaining about discomfort or pain in your presence?
> "A. He told his mother that he was experiencing pain."

Defense counsel's objection to this exchange was overruled.

On appeal, Oliveira contends that this testimony from Det. McIlmail contained inadmissible hearsay. However, our review of the entirety of Det. McIlmail's testimony convinces us that his testimony regarding Phillip's disclosure that he was experiencing pain was not offered to prove the truth of the matter asserted. Rather, the purpose of that testimony was to explain why Det. McIlmail urged Barbara to take the child to Hasbro. Accordingly, the out-of-court statement embedded within this portion of Det. McIlmail's testimony was not hearsay, and the trial justice did not abuse his discretion in overruling Oliveira's objection.

The same cannot be said for Det. McIlmail's testimony about what he learned after speaking with Barbara and the officer on scene. His answer to this question related Phillip's out-of-court statement that Oliveira had inserted his finger into Phillip's anus, and a non-hearsay purpose of this testimony is not apparent from the record. Therefore, this testimony was inadmissible hearsay. However, this error does not warrant reversal of Oliveira's conviction. Even without this evidence, the state had overwhelming evidence of Oliveira's guilt, including: Phillip's testimony about Oliveira's actions and that he relayed defendant's actions to his mother; Oliveira's written and oral confession to police; the letter he sent to Barbara apologizing for his conduct; and, most critically, evidence that Oliveira's seminal fluid was found in Phillip's anus. Under these circumstances, any error in admission of Det. McIlmail's testimony was harmless beyond a reasonable doubt. See State v. Momplaisir, 815 A.2d 65, 70 (R.I. 2003) ("[T]he admission of hearsay evidence is not prejudicial when the evidence is merely cumulative and when [the defendant's] guilt is sufficiently established by proper evidence." (quoting In re Andrey G., 796 A.2d 452, 457 (R.I. 2002))).

Oliveira's contention that the trial justice abused his discretion in ruling that Phillip's statement to his mother concerning what Oliveira did qualified as an excited utterance, such that Barbara was permitted to relate that statement to the jury, fares no better. Under Rule 803(2), excited utterances are "statement[s] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." "The test [under this exception] is whether, from a consideration of all the facts, the declarant 'was still laboring under the stress of excitement caused by the event when he or she made the statement at issue.'" Oliveira I, 961 A.2d at 315 (quoting State v. Morales, 895 A.2d 114, 120 (R.I. 2006)); see also Pompey, 934 A.2d at 215. Although the length of time between the occurrence of the event and

the utterance of the statement is one factor in the analysis, "the 'statement need not be strictly contemporaneous with the startling event to qualify as spontaneous,'" so long as it was "made while the declarant was still laboring under the stress of the event." Momplaisir, 815 A.2d at 70 (quoting State v. Mendez, 788 A.2d 1145, 1147 (R.I. 2002)). Moreover, "in cases of sexual assault[,] the time requirement is less demanding, especially when the victim is a child of tender years." Oliveira I, 961 A.2d at 315. Additionally, the question of "[w]hether a statement was in response to an inquiry is a factor in determining spontaneity, but does not render the excited-utterance exception inapplicable." Id.

After a careful review of the evidence, we cannot say that the trial justice abused his discretion on this score.[16] Barbara testified that, at the time Phillip confided in her, he appeared "nervous" and "afraid" and was acting "standoffish" and abnormally quiet.[17] Additionally, six-year-old Phillip's disclosure on the morning of August 12, 2004 followed relatively closely on the heels of this child's traumatic encounter with his grandfather—approximately twelve hours after the August 11, 2004 digital penetration, and even less time after Oliveira's second assault the next morning. See Morales, 895 A.2d at 116-17, 119-21 (affirming trial justice's determination that statements made by seven-year-old-sexual-assault victim to her aunt and mother the morning after the crime occurred qualified for admission under the excited-utterance exception). Further, the mere fact that the statement was in response to questioning does not foreclose a finding of spontaneity; and, given Phillip's relationship with Oliveira and his concern

---

[16] The state argues that, because this Court upheld the admission of Barbara's testimony about what Phillip told her during defendant's first trial in Oliveira I, consideration of defendant's challenge to this aspect of Barbara's testimony at his retrial is foreclosed by principles of res judicata. Because we affirm the trial justice on the merits, we need not—and, therefore, do not—address this argument.

[17] Additionally, Phillip testified that, when he disclosed Oliveira's actions to his mother, he was crying and "excited to see her" because he "needed to tell her what happened."

that Barbara would be mad at defendant, the trial justice did not act unreasonably in concluding that Phillip's disclosure was spontaneous and made while he was still laboring under the stress of the events of the prior night and that morning. See Oliveira I, 961 A.2d at 316.

Finally, we turn to Oliveira's claim of evidentiary error with respect to Dr. Barron's testimony. Doctor Barron testified that, in accordance with her protocol of obtaining a history from a caretaker, she interviewed Barbara when Phillip and his mother arrived at Hasbro. The following exchange then occurred:

> "Q. Is that [interview] for [the] purpose of medical diagnosis and treatment?
> "A. Yes, it is.
> "Q. Now with regard to medical diagnosis and treatment of [Phillip] at this point in time, what specifically did [Barbara] tell you with regard to that particular area?" (Emphasis added.)

The defendant objected to this question, and the trial justice overruled the objection. Doctor Barron answered that Barbara reported to her that Phillip "disclosed [to his mother] sexual abuse by his grandfather that occurred the night before."[18] Thus, although the question did not call for hearsay, the answer included the identity of the alleged perpetrator.

On appeal, Oliveira complains that this portion of Dr. Barron's testimony strayed from the confines of what is permissible under the medical-diagnosis-and-treatment-hearsay

---

[18] In addition to the above-quoted passage of her answer, Dr. Barron also testified that Barbara "found [Phillip] curled up like a ball under his covers." Oliveira argues on appeal that this testimony was both incompatible with Barbara's testimony and unfairly prejudicial. However, Oliveira did not move to strike Dr. Barron's answer or otherwise apprise the trial justice of this issue. Additionally, it is clear from the context of the general objection that was lodged to the question that preceded this answer that defendant was objecting on hearsay grounds. Therefore, Oliveira failed to preserve any argument other than his hearsay objection to this answer. See State v. Ucero, 450 A.2d 809, 815 (R.I. 1982) ("When at trial the introduction of evidence is objected to for a specific reason, other grounds for objection are waived and may not be raised for the first time on appeal.").

exception.[19]  See Rule 803(4).  Even assuming, without deciding, that the trial justice abused his discretion in overruling Oliveira's objection, any error was harmless beyond a reasonable doubt because of the overwhelming other evidence of the defendant's guilt.

**Conclusion**

Because we are of the opinion that the defendant's speedy-trial and evidentiary contentions are devoid of merit, we affirm the judgment of the Superior Court.  The papers in this case may be remanded to the Superior Court.

Justice Indeglia did not participate.

---

[19] The state claims that Oliveira failed to preserve the issue.  Because the question called only for what Barbara told Dr. Barron "with regard to medical diagnosis and treatment of [Phillip]," the argument goes, the trial justice appropriately overruled the objection.  See Rule 803(4) of the Rhode Island Rules of Evidence.  According to the state, by failing to move to strike Dr. Barron's answer, request a cautionary instruction, or move for a mistrial, Oliveira failed to preserve any issue with respect to Dr. Barron's answer.  The state may well be correct that, where a litigant unsuccessfully objects to an unobjectionable question and the witness's answer contains inadmissible evidence, it is incumbent on the litigant to also move to strike the inadmissible answer and that, in these circumstances, the objection to the unobjectionable question does not extend to the answer.  See State v. Keller, 844 P.2d 195, 201 (Or. 1993); see also Gould v. Day, 94 U.S. (4 Otto) 405, 414 (1876).  We need not address this issue in the context of this case.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## Clerk's Office Order/Opinion Cover Sheet

**TITLE OF CASE:**    State v. James Oliveira.

**CASE NO:**    No. 2013-246-C.A.
       (P1/04-3386A)

**COURT:**    Supreme Court

**DATE OPINION FILED:**  December 4, 2015

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

**WRITTEN BY:**    Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

    Associate Justice Daniel A. Procaccini

**ATTORNEYS ON APPEAL:**

    For State:  Jane M. McSoley
          Department of Attorney General

    For Defendant:  Catherine Gibran
           Office of the Public Defender