# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00349-COA

CHRISTOPHER WISE A/K/A CHRISTOPHER DONTARIUS WISE A/K/A CHRISTOPHER D. WISE                     APPELLANT

v.

STATE OF MISSISSIPPI                     APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/14/2017 |
| TRIAL JUDGE: | HON. JEFF WEILL SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | JEFFERY KENDRICK HARNESS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOSEPH SCOTT HEMLEBEN |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/24/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND WESTBROOKS, JJ.**

**LEE, C.J., FOR THE COURT:**

## PROCEDURAL HISTORY

¶1.     On June 26, 2015, Christopher Wise was indicted for the murder of Jerrell Brown. A jury in the Hinds County Circuit Court, First Judicial District, convicted Wise of manslaughter. Wise was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections. He now appeals, asserting the following issues: (1) the State committed a discovery violation; (2) the trial court erred in denying his motion for speedy trial; (3) the trial court erred in denying his motion for a directed verdict; (4) the trial court

erred in denying his jury instruction; and (5) the evidence was insufficient to convict him of manslaughter. Finding no error, we affirm.

## FACTS

¶2.    On the night of January 25, 2015, in Jackson, Mississippi, Marcus Ware testified that he received a call from Brown asking to buy drugs. Ware told Brown to come to his apartment and purchase the drugs from Wise. Brown came to the apartment, bought ecstasy pills and marijuana from Wise, and then left the apartment. Later, Brown called Ware complaining that the pills were not effective. Ware said that Brown indicated he was coming back to Ware's apartment. Ware stated that Wise waited on Brown, but left when Brown failed to show. Shortly after, Wise called Ware and told him that he had shot Brown. According to Ware, Wise implied that Brown had tried to rob him. Wise then told Ware, "You ain't seen nothing. You don't know nothing."

¶3.    Benard Vaughn, Brown's cousin, testified that he and Brown were with friends who wanted ecstasy. Brown then called Ware and asked for help in purchasing ecstasy and marijuana. Ware told them to come to his apartment and buy the drugs from Wise. Later at Ware's apartment, Brown purchased $100 worth of ecstasy pills and marijuana from Wise. According to both Vaughn and Wise, Brown pulled a large amount of cash from his pocket in order to pay for the drugs. Vaughn stated that he and Brown left to share the drugs with friends at a nearby apartment.

¶4.    After several hours, Vaughn went to wait for Brown in Brown's car. While waiting in the passenger seat, Vaughn fell asleep. He was roused by Brown, who told Vaughn that

2

they were leaving. Vaughn fell back asleep and remained asleep until a police officer woke him and informed him that Brown had been shot. Vaughn then saw Brown's body slumped over in the driver's seat of the car. Vaughn testified that he knew Brown had called Ware complaining that the pills Wise had sold him were not effective. Vaughn also stated that Brown was not carrying his weapon that night.

¶5. Alvin McDaniel, a patrolman with the Jackson Police Department (JPD), responded to the scene. McDaniel saw a white car with the driver's side door ajar. A deceased male, later determined to be Brown, was slumped over in the driver's seat with one leg partially protruding from the car. McDaniel noticed another male in the passenger's side seat who was sleeping. McDaniel also found a holstered gun on the driver's side floorboard.

¶6. Detective Ella Thomas with JPD testified that she investigated Brown's murder. Detective Thomas noted that Brown's car had blood on the outside and inside of the driver's side door. Brown's holstered gun was found on the floorboard under his legs. Three shell casings from a .9 mm handgun were found at the scene.

¶7. After locating Wise several months later, Detective Thomas interviewed him. Wise told her that Brown had threatened him with a gun, but that he was able to grab his gun and shoot at Brown over his left shoulder. Wise said Brown then ran away.

¶8. Robert Watts, a crime scene investigator with JPD, testified that he recovered three spent shell casings from the scene and that the location of the shell casings indicated the shooter was moving. Watts testified that "[t]he shooter started in the parking lot, moved towards the sidewalk and then to the rear of the vehicle as they were firing."

3

¶9. The forensic pathologist for the State testified that Brown died from two gunshot wounds to his back. Both shots entered Brown's back—one exited his left chest area and the other through the top right of his shoulder. The pathologist opined that the gun was fired from more than a few feet away.

¶10. Wise testified in his own defense. He stated that when he left Ware's apartment, Brown was waiting for him and acting aggressively. He testified that Brown placed his gun on the back of Wise's head and told Wise to be still. Wise then grabbed his gun from his car and fired shots over his left shoulder. Wise stated he "fired an initial burst of shots over my left shoulder." At that point, Brown began to run, but Wise continued to fire his gun. Wise never saw Brown's gun.

## DISCUSSION

### I. Discovery Violation

¶11. In his first issue on appeal, Wise argues that the State committed a discovery violation by failing to disclose "vital pieces of discovery until the eve of trial." During a pretrial hearing on September 9, 2015, Wise's trial counsel, Jeffrey Harness, indicated he had filed a motion for supplemental discovery, requesting the following: a report from the National Crime Information Center (NCIC) regarding Brown's criminal history; audio statements; written statements; Brown's phone records; crime-scene photos; and the autopsy report on Brown. At another hearing on November 2, 2016, Harness indicated he had not received the requested information.

¶12. At some point, the State sent Harness a letter to contact the district attorney's office

4

in order to set a time to view the physical evidence. During a pretrial hearing on February 3, 2017, Harness stated that he had not been able to obtain copies of the crime-scene photos and he had not received an NCIC report on Brown. The trial court ordered the State to email Harness digital copies of the crime-scene photos as soon as possible. The trial court denied Harness's request for Brown's criminal history.

¶13. On February 7, 2017, prior to trial, Harness stated that he had received the requested crime-scene photos. The trial court then asked if Harness had any other discovery matters to discuss. Harness replied that he did not.

¶14. Although Wise's brief is unclear as to the specific evidence the State failed to disclose, the record transcripts would indicate that Wise means the crime-scene photos. However, Wise cites to Uniform Circuit and County Court Rule 9.04(A)(2) for support. URCCC 9.04(A)(2) requires the State to produce copies "of any written or recorded statement of the defendant and the substance of any oral statement made by the defendant."[1] The record indicates that Wise did receive these items at some point between the first hearing on September 9, 2015, and the third hearing on February 3, 2017.

¶15. Although Wise did receive the crime-scene photos right before trial, he did not seek a continuance or a mistrial on any purported discovery violations. "The failure to request a continuance constitutes a waiver of the discovery violation." *Sims v. State*, 928 So. 2d 984, 988 (¶19) (Miss. Ct. App. 2006). This issue is without merit.

---

[1] We note that the Uniform Rules of Circuit and County Court relating to criminal practice have been supplanted by the Mississippi Rules of Criminal Procedure, effective July 1, 2017. But because the former rules were still in effect during Wise's trial, Rule 9.04 applies to Wise's case.

## II. Speedy Trial

¶16. Wise argues that the trial court erred in denying his motions to dismiss for lack of a speedy trial. "The Sixth Amendment to the United States Constitution provides an accused the right to a 'speedy and public trial.'" *Johnson v. State*, 68 So. 3d 1239, 1241 (¶6) (Miss. 2011) (citing U.S. Const. amend. VI). The United States Supreme Court has developed a balancing test to determine whether a defendant's constitutional right to a speedy trial has been violated. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The four factors to be considered together and balanced are: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Id.* at 530-32; *Stark v. State*, 911 So. 2d 447, 450 (¶7) (Miss. 2005).

### A. Length of the Delay

¶17. Under *Barker*, "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. In Mississippi, any delay from the date of arrest, indictment, or information until trial exceeding eight months is presumptively prejudicial. *Stark*, 911 So. 2d at 449-50 (¶7) (citing *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989)). The exact date of Wise's arrest is unclear—sometime in April 2015—but he was indicted on June 26, 2015, and his trial finally began on February 7, 2017. Since the delay exceeds eight months, it is presumptively prejudicial, and the cause of the delay must be analyzed under the remaining *Barker* factors.

### B. Reason for the Delay

¶18. "Once a delay is found to be presumptively prejudicial, the burden of proof shifts to the State to show cause for the delay." *Id.* at 450 (¶11). The appellate court must determine whether the delay should be charged to the State or the defendant. *Id.* Since the burden is on the State to provide a defendant with a speedy trial, this factor is weighed against the State unless it can show either that the delay was caused by the defendant or that the delay was for a good cause. *Id.*; *Wiley v. State*, 582 So. 2d 1008, 1012 (Miss. 1991).

¶19. Between December 9, 2015, and December 19, 2016, the trial court granted five continuances all due to a crowded docket. The trial court noted that neither the State nor Wise requested these continuances. The trial court further stated that "this Court serves as a trial court for the largest county in the State. This Court takes judicial notice that it has a heavy criminal trial calendar." "It is well settled that delays caused by overcrowded dockets are weighed against the State, although not heavily." *Johnson v. State*, 69 So. 3d 10, 14 (¶14) (Miss. Ct. App. 2010). We weigh this factor slightly against the State.

C.     Timely Assertion of the Right to a Speedy Trial

¶20. On June 10, 2016, almost one year after his indictment, Wise filed a pro se motion to dismiss for lack of a speedy trial. On August 30, 2016, Harness filed a motion to dismiss for lack of a speedy trial. Our supreme court "has established that asserting the right to a speedy trial and filing for dismissal for violating that same right are not one and the same." *Franklin v. State*, 136 So. 3d 1021, 1034 (¶51) (Miss. 2014). The record does not support that Wise actually asserted his right to a speedy trial, because Wise was demanding dismissal rather than demanding an actual trial. Thus, we find this factor slightly favors the State. *Id.* at 1036

7

(¶55).

### D. Prejudice to Wise

¶21. The supreme court has identified three main considerations in determining whether the defendant has been prejudiced by a lengthy delay: "(1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired." *Jefferson v. State*, 818 So. 2d 1099, 1108 (¶21) (Miss. 2002) (internal quotation marks omitted). "Generally, proof of prejudice entails the loss of evidence, death of witnesses, or staleness of an investigation." *Sharp v. State*, 786 So. 2d 372, 381 (¶19) (Miss. 2001).

¶22. Wise claims he was prejudiced for two reasons: (1) he could not complete his education while trial was pending, and (2) many witnesses were unavailable at trial. In regard to Wise's continued incarceration, our supreme court has held that "incarceration alone does not constitute prejudice." *Jenkins v. State*, 947 So. 2d 270, 277 (¶21) (Miss. 2006). And our case law "does not recognize as prejudice the negative emotional, social, and economic impacts that accompany incarceration." *Id.* In regard to the unavailability of witnesses, Wise fails to specify which witnesses he claims were unavailable for trial and the substance of their testimony.

¶23. In conclusion, our supreme court has stated "that where the delay is neither intentional nor egregiously protracted, and there is an absence of actual prejudice to the defense, the balance is struck in favor of rejecting a speedy trial claim." *Johnson*, 68 So. 3d at 1246 (¶22). Upon review, we cannot find that Wise was denied his constitutional right to a speedy

8

trial.

### III. Directed Verdict

¶24. Wise argues that the trial court should have granted his motion for a directed verdict for two reasons. First, Wise claims that the State failed to prove every element in the indictment. Second, Wise contends that the *Weathersby* rule applied.

#### A. Indictment

¶25. Wise contends the State failed to prove every element in the indictment; thus, the trial court erred by not granting his motion for a directed verdict at the close of the State's evidence. The indictment charging Wise stated that he did:

> willfully, unlawfully, and feloniously kill Jerrell Brown, a human being, without authority of law, with deliberate design to effect the death of said person or of any human being, by shooting the said Jerrell Brown *in the chest* with a [.9 mm] firearm in violation of Section 97-3-19(1)(a) (1972), as amended, contrary to the form of the statute . . . .

(Emphasis added). Wise claims the State failed to prove that Brown was shot in the chest. Instead, the evidence showed that Brown was shot twice in the back, with two exit wounds on his chest. Regardless of any discrepancy, the cause of death is not an element in deliberate-design murder. *See* Miss. Code Ann. § 99-7-37(1) (Rev. 2015) ("In an indictment for homicide it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused . . . ."). Thus, we find no error by the trial court in denying Wise's motion for a directed verdict.

#### B. *Weathersby* Rule

¶26. According to *Weathersby*, "where the defendant or the defendant's witnesses are the

only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness . . . , or by the physical facts or by the facts of common knowledge." *Weathersby v. State*, 165 Miss. 207, 209, 147 So. 481, 482 (1933). Moreover, the defendant's version "must be reasonable and credible before he is entitled to an acquittal under the rule." *Blanks v. State*, 547 So. 2d 29, 33 (Miss. 1989).

¶27. Wise claims that the State failed to produce any witnesses to rebut his claim that he killed Brown in self-defense. While the State did not have any eyewitnesses to the shooting, the State did present physical evidence that contradicted Wise's version of events. The forensic pathologist noted that Brown was shot twice in the back from a distant or intermediate range. The crime-scene investigators noted that the placement of the three recovered shell casings indicated Wise was moving while shooting Brown. And there was testimony that Brown's gun was holstered and laying on the floorboard of Brown's car under his legs, indicating that Brown had not pointed his gun at Wise. After the shooting, Wise called Ware and instructed him to stay quiet, fled the area, and later called a tip hotline to get information related to the investigation. Taking Wise's testimony together with the physical evidence and the fact that Wise left the area, we cannot find the trial court erred in denying Wise's motion for a directed verdict. This issue is without merit.

### IV. Jury Instruction

¶28. Wise argues that the trial court erred in denying his proposed *Weathersby* jury instruction. Wise's proposed defense instruction thirteen stated that "[t]he Court instructs

the jury that where the defendant or the defendant's witness are the only eyewitnesses to the homicide, their version if reasonable, must be accepted as true." Having found no error by the trial court in denying Wise's motion for directed verdict based on *Weathersby*, we likewise find no error by the trial court in denying this particular jury instruction. Furthermore, "the *Weathersby* [r]ule is not the proper subject of an instruction to the jury." *Green v. State*, 631 So. 2d 167, 175 (Miss. 1994). This issue is without merit.

## V. Insufficient Evidence

¶29. In his final issue, Wise argues that the evidence was insufficient to support his manslaughter conviction. In reviewing the sufficiency of the evidence, "the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed . . . ." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (internal quotation mark omitted) (abrogated on other grounds by *Little v. State*, 233 So. 3d 288 (Miss. 2017)). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction. *Id.* Furthermore, it is well-settled law that the jury determines the credibility of the witnesses and resolves conflicts in the evidence. *Davis v. State*, 866 So. 2d 1107, 1112 (¶17) (Miss. Ct. App. 2003).

¶30. Again, Wise argues that the State failed to provide evidence to contradict his theory of self-defense. The jury was instructed on deliberate-design murder, culpable-negligence manslaughter, and self-defense. The statutory elements of culpable-negligence manslaughter

11

are "an unlawful killing by the culpable negligence of another." *Ramage v. State*, 914 So. 2d 274, 276 (¶5) (Miss. Ct. App. 2005) (citing Miss. Code Ann. § 97-3-47 (Rev. 2014)). A jury instruction was also given defining culpable negligence as "such gross negligence as to evince a wanton or reckless disregard for the safety of human life, or such an indifference to the consequences of an act under the surrounding circumstances as to render such conduct tantamount to willfulness." According to Wise's testimony, he fired an "initial burst" of shots over his left shoulder then continued to fire at Brown when Brown ran away. Such actions have been deemed sufficient to support a culpable-negligence manslaughter conviction. *See Tait v. State*, 669 So. 2d 85, 90 (Miss. 1996); *Jernigan v. State*, 305 So. 2d 353, 354 (Miss. 1974); *Harried v. State*, 773 So. 2d 966, 969 (¶¶7-8) (Miss. Ct. App. 2000); *Towner v. State*, 726 So. 2d 251, 254-55 (¶8) (Miss. Ct. App. 1998). This issue is without merit.

¶31. **AFFIRMED.**

**IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**