# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01415-COA

**DAVID LEE MAY A/K/A DAVID L. MAY A/K/A**         **APPELLANT**
**DAVID MAY**

**v.**

**STATE OF MISSISSIPPI**         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/10/2017 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES PHILLIP BROADHEAD |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOSEPH SCOTT HEMLEBEN LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/21/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**J. WILSON, P.J., FOR THE COURT:**

¶1. Following a jury trial in the Harrison County Circuit Court, David Lee May was convicted of two counts of aggravated assault and sentenced, as a violent habitual offender, to concurrent terms of life imprisonment. May raises one issue on appeal: whether the circuit court should have dismissed his indictment based on a violation of his constitutional right to a speedy trial. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    On October 27, 2012, May was arrested for the aggravated assaults of Jessica McLard and Arnold Quave.  May was indicted for two counts of aggravated assault on June 17, 2013, as a violent habitual offender, and the court appointed counsel (Phillip Wittman) to represent him three days later.  On July 22, 2013, in a separate cause number, May was indicted for possession of cocaine, again as a violent habitual offender.  The same day, May filed a motion for a continuance in both cases.  The reason given for May's request was "new discovery for the defendant."  The motion stated that May waived his speedy trial rights and objections.  The court granted the motion "upon consideration of good cause."  The court set trial for September 23, 2013.  However, trial did not commence on that date.  It appears that trial may have been continued on that date because May informed the court that he wanted to proceed pro se with Wittman as "standby counsel."

¶3.    On October 14, 2013, May and the State filed a joint motion for a continuance on the grounds that a witness for the State was unavailable and May needed time to review discovery materials.  The court granted the motion "upon consideration of good cause" and reset the trial for November 4, 2013.

¶4.    On November 12, 2013, May filed a pro se motion for a speedy trial in this case.  The next day, the court entered an order applicable to both of May's cases.  The order stated that both cases had been set for trial the week of November 4, 2013, but neither was tried because a case above them on the docket had gone to trial.  The order also stated that the parties had agreed to a hearing date on May's motion to suppress in the drug case (December 2, 2013) and a new trial date for both cases (December 9, 2013).

2

¶5. On December 9, 2013, May's drug case went to trial. He was convicted of possession of cocaine and sentenced to life imprisonment as a violent habitual offender. May appealed.

¶6. Nothing else happened in May's assault case until April 30, 2015. On that date, the court entered an order allowing Wittman to withdraw and appointing Jim Davis as May's new attorney. The order also set May 18, 2015, as the new plea or trial date. The case was not tried on that date. On June 5, 2015, May filed a pro se motion to dismiss for failure to provide a speedy trial.

¶7. On October 15, 2015, May and the State filed a joint motion for a continuance. The motion indicated that May was not present in court but, through counsel, waived all speedy trial rights and objections. The motion gave "appeal pending in other case" as the reason for the continuance. The court granted the joint motion "upon due consideration of good cause," and the trial was reset for April 18, 2016.

¶8. On November 2, 2015, Jim Davis sent a letter to the assistant district attorney to inform her that May was not waiving his right to a speedy trial and desired a trial "as soon as possible" and "before April." In response, the State filed a "Motion to Set Earlier Trial Date." However, the State's motion advised the court that Davis had stated that he was "not available for any of the next six (6) available trial weeks" in December 2015 or January 2016. Consequently, the State simply asked the trial court for "the earliest trial setting that [would fit Davis's] schedule."

¶9. On November 17, 2015, May filed a pro se petition for a writ of mandamus in the Mississippi Supreme Court. May's petition sought a ruling on his motion to dismiss for

3

failure to provide a speedy trial. A panel of the Supreme Court denied May's petition. *In re: David Lee May*, No. 2015-M-01700 (Miss. Dec. 9, 2015).

¶10. On April 18, 2016, May, through counsel, filed a motion for a continuance. The motion stated that discovery was "ongoing" and "not completed." The motion also stated that May again waived all speedy trial rights and objections. The court granted the motion "upon due consideration of good cause" and reset the trial for July 5, 2016.

¶11. On July 5, 2016, Davis filed another motion for a continuance. Davis's motion stated that he had met with May only twice because May had been in the custody of the Department of Corrections (due to his conviction and life sentence for possession of cocaine). Davis's motion also stated that he needed more time to review the "voluminous" discovery, that he might need time to retain an expert witness to address fingerprint evidence, and that he might need time to request the toxicology test results of both victims. At the hearing on the motion, Davis argued that he needed additional time to prepare for trial and that a continuance was in May's best interest, but Davis also acknowledged that May objected to a continuance. May told the court that he wanted to go to trial pro se that day despite counsel's motion. However, the court granted a continuance and reset the trial for October 3, 2016.

¶12. On October 3, 2016, the trial was postponed again, this time on the court's own motion. The court's order stated that the trial was postponed because a jury could not be brought to the courthouse because the "streets all around [the] courthouse [were] to be closed" "during a coast event." The record does not identify "coast event." On appeal, May alleges that it was the Cruisin' the Coast classic car show and festival. Trial was reset for

4

April 25, 2017.

¶13. On December 13, 2016, this Court reversed May's drug conviction. *See May v. State*, 222 So. 3d 1074 (Miss. Ct. App. 2016), *cert. denied*, 223 So. 3d 765 (Miss. 2017). This Court denied rehearing on April 11, 2017. The State then filed a petition for a writ of certiorari, which the Mississippi Supreme Court denied on August 3, 2017.

¶14. May's case was not tried in April, as had been scheduled. On May 16, 2017, the court entered an order that stated only that the court had been "unavailable for a trial the week of April 25, 2017." The court reset the trial for September 11, 2017.

¶15. On August 1, 2017, Davis moved to withdraw because a "conflict ha[d] arisen between" him and May. Davis noticed his motion for hearing on August 28, 2017.

¶16. On August 28, 2017, May, through counsel, filed a motion for a continuance requesting a "short delay." May's motion stated that he waived his speedy trial rights and objections "for this 2 week delay" only. The court granted the continuance "upon due consideration of good cause." The court set a hearing for September 11, 2017, and rescheduled the trial for September 25, 2017.

¶17. On September 14, 2017, the court held a motions hearing and addressed Davis's motion to withdraw. Counsel stated that he would remain as trial counsel but May would also participate in his own defense. The court also heard May's motion to dismiss for failure to provide a speedy trial. May testified that he "always wanted to go to trial on the charges" and that he had not approved of any of the continuances requested by his attorneys. The court reserved ruling on May's motion.

5

¶18.    On September 26, 2017, the trial court orally denied May's motion to dismiss, and May's trial finally began later that day.[1]  Jessica McLard testified that in July 2012 she was staying at a house in Biloxi with her boyfriend (Bobby Cook), Arnold Quave, and Brandon Birchfield.  McLard and Cook were in Biloxi to work on a short-term construction job.  McLard testified that Quave allowed May to spend one night on a couch in the living room of the house.  May apparently worked with Quave on a shrimp boat, but Quave only knew him as "David" and did not know his last name.  McLard did not know May and only saw him briefly on the porch when she returned home that evening.  The next morning McLard awoke to find May in her bedroom staring at her.  May then demanded sex.  McLard refused, but May persisted and eventually grabbed McLard by the throat, put her in a choke hold, punched her in the face, and cut her face with a knife.  Quave heard McLard screaming and tried to intervene, but May cut Quave's arm with the knife.  McLard escaped the house, and a neighbor heard her screaming and called the police. Photographs of McLard's and Quave's injuries and blood spattered through the house were admitted into evidence at trial.

¶19.    The jury found May guilty on both counts of aggravated assault, and the court sentenced May to concurrent terms of life imprisonment as a violent habitual offender.  May filed a timely notice of appeal.  May does not challenge the weight or sufficiency of the evidence against him or allege any other error during his trial.  As stated above, his only claim on appeal is that the delay in bringing his case to trial violated his state and federal constitutional rights to a speedy trial.

---

[1] In a post-trial written order, the court addressed the "*Barker* factors," *see Barker v. Wingo*, 407 U.S. 514 (1972), and explained its reasons for denying May's motion.

ANALYSIS

¶20.    The Mississippi Constitution and the United States Constitution both protect the defendant's right to "a speedy . . . trial."[2]  Miss. Const. art. 3, § 26; U.S. Const. amend. VI.[3]  "When considering an alleged violation of a defendant's [state or federal constitutional] right to a speedy trial, [the Mississippi Supreme] Court applies the four-part test developed by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972)." *Newell v. State*, 175 So. 3d 1260, 1269 (¶19) (Miss. 2015); *accord Flora v. State*, 925 So. 2d 797, 815 (¶61) (Miss. 2006).  "The *Barker* test 'requires a balancing of four factors: (1) length of delay; (2) reasons for the delay; (3) defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant.'" *Reed v. State*, 191 So. 3d 134, 139 (¶8) (Miss. Ct. App. 2016) (quoting *Taylor v. State*, 162 So. 3d 780, 783 (¶6) (Miss. 2015)).  "[T]he [United States] Supreme Court has held that courts must 'engage in a difficult and sensitive balancing process' of the four factors because none of the factors is 'either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must

---

[2] The dissent cites the speedy trial statute, Miss. Code Ann. § 99-17-1 (Rev. 2014). However, May does not develop such an argument on appeal, so the issue is waived. *See Randolph v. State*, 852 So. 2d 547, 558 (¶29) (Miss. 2002).  May chooses not to develop that argument because he concedes that there is no record that he was arraigned prior to the first day of his trial.  "[O]ur speedy trial statute is plain and unambiguous, and it requires that the defendant be tried no later than 270 days *after arraignment* unless good cause be shown. Thus, under this statute, *the time prior to arraignment is not computed to determine compliance with the statute*." *Perry v. State*, 419 So. 2d 194, 198 (Miss. 1982) (emphasis added).  Because May was tried the same day he was arraigned, there was no violation of the speedy trial statute. *Id.*

[3] The Sixth Amendment right to a speedy trial is applicable to the states through the Fourteenth Amendment.  *See Klopfer v. North Carolina*, 386 U.S. 213, 223-26 (1967).

7

be considered together with such other circumstances as may be relevant.'" *Id.* (quoting *Barker*, 407 U.S. at 533). "No mathematical formula exists according to which the *Barker* weighing and balancing process must be performed." *Flora*, 925 So. 2d at 815 (¶61) (quoting *Beavers v. State*, 498 So. 2d 788, 790 (Miss. 1986)).

### 1. Length of the Delay

¶21. "For constitutional speedy-trial claims, both the United States Supreme Court and the Mississippi Supreme Court have clearly held that the starting point for the calculation of the time begins with the defendant's formal indictment or information or arrest. Thus, the precise point at which the right attaches is when the individual has been accused." *McBride v. State*, 61 So. 3d 174, 179 (¶11) (Miss. Ct. App. 2010), *aff'd*, 61 So. 3d 138 (Miss. 2011) (citations omitted). Under *Barker*, "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. "In Mississippi, any delay from the date of arrest, indictment, or information until trial exceeding eight months is presumptively prejudicial." *Wise v. State*, 263 So. 3d 668, 672 (¶17) (Miss. Ct. App. 2018), *cert. denied*, 263 So. 3d 665 (Miss. 2019). This shifts the burden to the State to show the reasons for delay. *Graham v. State*, 185 So. 3d 992, 1005 (¶41) (Miss. 2016). However, the fact that "the delay is presumptively prejudicial . . . does not mean that *actual* prejudice to the defendant exists. Rather, actual prejudice is determined at a different point in the *Barker* analysis." *Id.*; *see infra*.

¶22. May was arrested in October 2012 and indicted in June 2013. His case did not

proceed to trial until September 2017. The delay of almost five years between May's arrest and trial is "presumptively prejudicial." *Wise*, 263 So. 3d at 672 (¶17). This does not mean that May suffered any *actual* prejudice. *Graham*, 185 So. 3d at 1005 (¶41). It only means that this one factor weighs against the State, that we must proceed to analyze the remaining *Barker* factors, and that the State bears the burden of showing the reasons for the delay. *See Barker*, 407 U.S. at 530; *Graham*, 185 So. 3d at 1005 (¶40).

### 2. Reasons for the Delay

¶23. "When the length of the delay is presumptively prejudicial, the burden shifts to the prosecution to produce evidence justifying the delay." *Bateman v. State*, 125 So. 3d 616, 629 (¶45) (Miss. 2013). "This Court must then determine if the delay is attributable to the State or the defendant." *Collins v. State*, 232 So. 3d 739, 745 (¶20) (Miss. Ct. App. 2017), *cert. denied*, 299 So. 3d 123 (Miss. 2017). Different reasons for delay are assigned different weights. *Barker*, 407 U.S. at 532. "'Deliberate attempts to delay the trial in order to hamper the defense are weighted heavily against the State. On the other hand, 'a more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.'" *Collins*, 232 So. 3d 745 (¶20) (quoting *Hardy v. State*, 137 So. 3d 289, 299 (¶30) (Miss. 2014)). Basically, "the State must prove either that the defendant prompted the delay or that the State had good cause." *De la Beckwith v. State*, 707 So. 2d 547, 606 (Miss. 1997). "We will uphold a trial court's factual determination regarding whether delay arose from good cause if it is based on substantial,

credible evidence." *Reed*, 191 So. 3d at 139 (¶9) (citing *DeLoach v. State*, 722 So. 2d 512, 516 (¶12) (Miss. 1998)). In this case, we find it useful to divide the time prior to trial into five periods, which we address below chronologically.

¶24. First, May was arrested in October 2012 but not indicted until June 2013. Based on testimony presented by the State, the trial court found that this initial delay was caused by the "heavy docket in [the] district" and delay in obtaining the victims' medical records from medical providers. The trial court found that this delay was "reasonable" and that "the State ha[d] shown good cause for [it]." Thus, the trial court did not count the delay against the State. *See Collins v. State*, 817 So. 2d 644, 653-54 (¶¶18-21) (Miss. Ct. App. 2002) (holding that delay caused by post-arrest, pre-indictment investigation did not favor the defendant when the State provided "legitimate" reasons for it). On appeal, May states that he "does not put at issue the . . . delay between his arrest and indictment." Therefore, we will also treat this delay as neutral. *See id.*

¶25. Second, the period from May's first request for a continuance in July 2013 until his December 2013 trial in his drug case is attributable to continuance motions that May either filed or joined. Through counsel, May waived speedy trial objections to the delays, and the trial court found good cause for the continuances. Moreover, a joint motion for a continuance is treated "as if it were sought by the defense" and will be "charged against" the defendant. *Sharp v. State*, 786 So. 2d 372, 378 (¶7) (Miss. 2001). Therefore, the delay from May's indictment until his December 2013 trial in his drug case weighs against May.

¶26. Third, there was an extended period of inactivity and delay in this case after May's

10

December 2013 conviction for possession of cocaine. Thereafter, nothing else happened in this case until April 30, 2015, when May's original counsel (Wittman) was allowed to withdraw[4] and new counsel (Davis) was appointed. The record does not provide any good cause for the near-seventeen-month delay from December 2013 to April 30, 2015.

¶27. In *Collins*, *supra*, we reasoned that the defendant's conviction and life sentence on one charge did *not* relieve the State of its obligation to bring him to trial another charge. *See Collins*, 232 So. 3d at 745 (¶22). "[I]n general, the constitutional speedy trial clock is not tolled simply because the defendant is already serving a sentence on a separate charge." *Id.* (citing *Smith v. Hooey*, 393 U.S. 374, 378-79 (1969)). Moreover, "[i]t is well settled that any unexplained trial delay tolls heavily against the State[.]" *Rowsey v. State*, 188 So. 3d 486, 494 (¶23) (Miss. 2015). Therefore, although there is no evidence that the State intentionally delayed May's trial, the unexplained seventeen-month delay following May's conviction for drug possession must be weighed against the State.

¶28. A fourth period of delay followed Wittman's withdrawal and Davis's appointment on April 30, 2015. A new plea or trial date was set for May 18, 2015, but the case was not tried on that date.[5] On October 15, 2015, the State and Davis filed a joint motion for a continuance, but the only explanation given was "appeal pending in other case." The court

---

[4] The State's appellate brief states that May "fired" Wittman. That may be true, but we are unable to find anything in the record to confirm it. Wittman apparently made an oral motion to withdraw at a hearing that was not transcribed, and the court's subsequent written order granting Wittman's motion does not provide any reasons.

[5] No order continuing the case was entered. It appears that the case may not have been placed on the trial court's docket for May 18, 2015.

granted the joint motion without any additional explanation and reset the trial for April 18, 2016. However, on November 2, 2015, Davis informed the State that May wanted a trial "as soon as possible" and before April 2016. Despite asking for a prompt trial, Davis also stated that he (Davis) was unavailable for the court's next six available trial dates in December 2015 and January 2016. Moreover, Davis subsequently sought continuances in April 2016 and July 2016. In each of those motions, Davis explained that he needed more time to prepare for trial. The court granted Davis's motions—the latter over May's objection—and ultimately reset the trial for October 3, 2016.

¶29. The approximately seventeen-month delay from April 30, 2015 to October 3, 2016 defies easy analysis under *Barker*. Some delay subsequent to Davis's appointment is understandable and does not weigh against the State.[6] Months later, however, Davis requested additional continuances and represented to the court that he needed more time to prepare, while May personally objected to any further continuance and sought a trial. The trial court granted defense counsel's requests and ultimately ruled as follows:

> Mr. May, as you can appreciate, even though you don't want a continuance, your lawyer, under his obligations to the court, has to let me know if he is ready or not ready. And he is telling me he is not ready because he hasn't adequate time to meet with you or prepare your defense. I'm going to grant his motion for continuance, not for any long period of time, not for six months or a year, but just for a month or two to allow him more opportunity to meet with you and prepare himself.

A trial court has broad discretion to grant a continuance, *see, e.g.*, *McClendon v. State*, 335

---

[6] *See, e.g.*, *Sharp*, 786 So. 2d at 379 (¶9) ("[A] delay caused by the withdrawal of the defendant's attorney which entails allowing the new attorney a reasonable time to become familiar with the case and prepare for trial cannot be weighed against the State because it is beyond the State's control.").

So. 2d 887, 888 (Miss. 1976), and we cannot say that the trial judge abused his discretion by granting a continuance to give counsel time to prepare. Nor can we say that the judge clearly erred in finding good cause for the continuance. *See Reed*, 191 So. 3d at 139 (¶9).

¶30. In addition, May is bound by his lawyer's decisions as to the timing of trial and the need for a continuance. *See Summers v. State*, 914 So. 2d 245, 254 (¶23) (Miss. Ct. App. 2005) (holding that defense counsel "was responsible for all aspects of timing [of the defendant's] trial" and had full authority to waive speedy trial objections); *see also Thomas v. State*, 249 So. 3d 331, 349 (¶62) (Miss. 2018) ("[W]ith certain exceptions, criminal defendants are bound by the actions of their lawyers."). A pro se demand for a speedy trial does not absolve the defendant of responsibility for a continuance that his own lawyer sought and obtained. *See State v. Oliveira*, 127 A.3d 65, 77 (R.I. 2015). "[I]n the course of attributing delays caused by defense counsel to the defendant for speedy-trial purposes, when an attorney-client relationship exists, the client may not pick and choose which of his attorney's actions shall bind him." *Id.* (quotation marks omitted). Thus, May is charged with delays caused by his own attorney. For all these reasons, this fourth period of delay, which was primarily due to continuances sought by defense counsel, weighs against May.

¶31. The fifth and final significant period of delay is attributable to the court. In October 2016, the court postponed the trial again because the streets around the courthouse were going to be closed for a "coast event." In addition, in April 2017, the trial was postponed again. The court's order stated only that the court had been "unavailable for trial the week of April 25, 2017." The trial was rescheduled for September 2017, and May did finally go

to trial in September 2017. Our Supreme Court has held that, "[a]s a general rule, delays resulting from docket congestion are to be weighed against the State, but not heavily." *Stevens v. State*, 808 So. 2d 908, 916 (¶20) (Miss. 2002); *accord Lee v. State*, 134 So. 3d 834, 837 (¶¶9-10) (Miss. Ct. App. 2014). It is the State's obligation to bring the defendant to trial, so "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531. Likewise, we conclude that the trial court's unavailability in October 2015 and again in April 2017—whatever the reasons may have been—must be weighed against the State, though not heavily. *See Booker v. State*, 5 So. 3d 411, 421 (¶25) (Miss. Ct. App. 2008) (holding that unavailability of the court weighed slightly against the State).

¶32.    In summary, two significant periods of time must be weighed against the State, two periods of delay are chargeable against May, and one period of delay is neutral. The approximately seventeen-month delay subsequent to May's conviction for possession of cocaine (December 2013 to April 2015) weighs against the State, and the approximately eleven-month delay attributable to the court (October 2016 to September 2017) also weighs slightly against the State. The trial court found that the post-arrest, pre-indictment delay of almost eight months was reasonable and neutral, and May does not challenge that finding on appeal. Finally, two periods of delay weigh against May because they are related to continuance motions that he filed or joined. These periods are July 2013 to December 2013 (about five months) and May 2015 to October 2016 (about seventeen months). Thus, although significant periods of delay are attributable to May, a somewhat larger part of the

14

overall delay weighs against the State. Accordingly, we conclude that this factor weighs slightly in favor of May and slightly against the State.

### 3. Assertion of the Right to a Speedy Trial

¶33. "Although it is the State's duty to ensure that the defendant receives a speedy trial, a defendant has some responsibility to assert this right." *Bateman*, 125 So. 3d at 630 (¶48) (quoting *Taylor v. State*, 672 So. 2d 1246, 1261 (Miss. 1996)). "Therefore, 'the defendant's assertion of his right to a speedy trial weighs in his favor.'" *Reed*, 191 So. 3d at 140 (¶16) (quoting *Franklin v. State*, 136 So. 3d 1021, 1034 (¶50) (Miss. 2014)). "In contrast, 'a defendant's failure to demand a speedy trial between his arrest and indictment is critical to the analysis of a speedy-trial claim.'" *Id.* (quoting *Taylor*, 162 So. 3d at 785 (¶10)).

¶34. May first asserted his right to speedy trial on November 12, 2013. This was an actual demand for a speedy trial rather than only a demand for dismissal. *See, e.g.*, *Smiley v. State*, 798 So. 2d 584, 589 (¶18) (Miss. Ct. App. 2011) (noting the "distinct difference" between the two and the greater significance of a demand for trial). However, May's demand came more than a year after his arrest and nearly five months after his indictment. In addition, before May asserted his right to a speedy trial, he had already requested and obtained two continuances. In *Williams v. State*, 5 So. 3d 496, 502-03 (¶¶15-16) (Miss. Ct. App. 2008), this Court reasoned that the defendant's failure to assert his right to speedy trial until nearly one year after his arrest weighed against him.

¶35. May also filed a pro se motion to dismiss for lack of a speedy trial on June 5, 2015, and a pro se petition for writ of mandamus with the Mississippi Supreme Court on November

15

17, 2015, seeking a ruling on that motion. May's attorney, Davis, also wrote a letter to the assistant district attorney stating that May wanted to go to trial "as soon as possible" and did not waive his right to speedy trial. However, as discussed above, the State responded with a motion to grant May a sooner trial, but Davis advised that he was unavailable for any of the first six available trial dates that the State offered.

¶36. Moreover, May, through counsel, joined in or filed motions for further continuances in October 2015, April 2016, and July 2016. "[A] defendant's assertion of his speedy trial rights should manifest his desire to be tried promptly." *Perry v. State*, 233 So. 3d 750, 758 (¶17) (Miss. 2017) (quotation marks omitted). "When a defendant moves for a speedy trial but simultaneously requests a continuance, the defendant's speedy-trial request cannot be viewed as a request to be tried promptly." *Id.* (citing *Rowsey*, 188 So. 3d at 495 (¶28)).

¶37. In summary, May did demand a speedy trial, but he waited over a year to do so, and his pro se demand was undermined by his attorney's subsequent requests for continuances. Under the circumstances, this factor weighs in favor of May but only slightly. *See Jasso v. State*, 655 So. 2d 30, 34 (Miss. 1995) (holding that this factor weighed only slightly in favor of defendants who demanded a speedy trial but subsequently requested continuances).

### 4. Prejudice

¶38. "To determine whether the delay resulted in actual prejudice, the Court considers three interests that the right to a speedy trial was meant to protect: '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" *Taylor*, 162 So. 3d at 787 (¶16) (quoting

16

*Jenkins v. State*, 947 So. 2d 270, 277 (¶21) (Miss. 2006)). "Of these three interests, the last is the most important; and when violated the most prejudicial to the defendant." *Collins*, 232 So. 3d at 746 (¶26) (quoting *Hersick v. State*, 904 So. 2d 116, 123 (¶18) (Miss. 2004)). "Generally, proof of prejudice entails the loss of evidence, death of witnesses, or staleness of an investigation." *McCormick v. State*, 183 So. 3d 898, 903 (¶21) (Miss. Ct. App. 2015) (quoting *Sharp*, 786 So. 2d at 381 (¶19)). May "bears the burden of showing actual prejudice, since the defendant is clearly in the best position to show prejudice under this prong." *Reed*, 191 So. 3d at 141 (¶19) (brackets and quotation marks omitted).

¶39. May generally alleges that he suffered "anxiety and concern" from pretrial incarceration. However, "the [Mississippi] Supreme Court has held that a defendant fails to establish actual prejudice by 'simply repeating the factors to be considered' with 'nary a scintilla of evidence to support his claims.'" *Collins*, 232 So. 3d at 746 (¶27) (quoting *Taylor*, 162 So. 3d at 787 (¶16)). Thus, May's generalized assertions do not establish actual prejudice. *Id.*

¶40. May also asserts that his defense was impaired because "[e]vidence was lost, memories faded, and testimony concerning the assault was rendered unreliable all due to the five-year delay." May specifically claims that he was prejudiced because (1) a photo lineup was lost; (2) Quave could not be found and did not testify at trial; and (3) McLard, the sole testifying eyewitness, was unreliable due to the delay. We address these issues in turn.

¶41. Investigator Nick Sonnier of the Biloxi Police Department (BPD) testified that, soon

after the assault, BPD received information that the assailant's name was David Cobb.[7] BPD then obtained a photograph of Cobb from another law enforcement agency and included it in a six-person photo lineup. The lineup did *not* include May because May's name had not yet surfaced in the investigation. BPD showed the photo lineup to McLard and Quave on the day of the assault, but neither of them identified Cobb (or anyone else in the lineup) as their assailant. Later that day, BPD matched a fingerprint in the house to May. Sonnier then created a new photo lineup that included May, and the next morning both Quave and Birchfield identified May as the assailant. The new lineup was not shown to McLard because she had already been transported to the University of South Alabama Medical Center for plastic surgery on her face and eye.

¶42. On appeal, May asserts that he was prejudiced because the first photo lineup with Cobb was not retained. This argument is without merit. To begin with, that lineup is irrelevant and would not have helped May's case. It did not include May, and no witness identified Cobb or anyone else in it as the assailant. Moreover, the issue has nothing to do with any delay in bringing May to trial. Sonnier testified that the lineup with Cobb was not saved as part of BPD's case file because May was not in it and it did not result in a positive identification. The lineup was not "lost" because of any later delays in the trial.

¶43. Quave did not testify at trial. At one point during the trial, the assistant district attorney stated that Quave could not testify at trial because he was "in the affected area of Houston," presumably referring to flooding in Houston, Texas. That is all that the record

---

[7] As noted above, Quave knew May only as "David" and did not know his last name.

discloses as to Quave's absence. There is nothing to show that May wanted to call Quave as a witness. Nor does May attempt to explain how he was prejudiced by the absence of a victim/eyewitness who had positively identified him as the assailant.

¶44. Finally, May's claim that McLard was not a reliable witness is based on a misunderstanding of the record. May asserts that McLard's "inability to identify a suspect in the first six-pack lineup at Biloxi [Regional] Medical [Center]" is inconsistent with "her 'absolute' identification of Mr. May as the assailant some five years later at trial." However, there is no inconsistency. As explained above, the photo lineup shown to McLard did *not* include May, and McLard was not shown the second lineup (with May) because she had already been transported to Alabama for additional medical treatment and surgery. There is nothing inconsistent or unreliable about McLard's trial testimony or her positive identification of May as her assailant. May fails to show that the delay had any impact on McLard's testimony or caused him any sort of prejudice at trial.

¶45. "[W]e will not infer prejudice to the defense out of the 'clear blue.'" *State v. Magnusen*, 646 So. 2d 1275, 1285 (Miss. 1994). Moreover, "a defendant fails to establish actual prejudice by 'simply repeating the factors to be considered' with 'nary a scintilla of evidence to support his claims.'" *Collins*, 232 So. 3d at 746 (¶27) (quoting *Taylor*, 162 So. 3d at 787 (¶16)). May has not established any actual prejudice whatsoever. The absence of any prejudice "weighs heavily against [May] and in favor of the State." *DeLoach*, 722 So. 2d at 518 (¶23); *accord, e.g.*, *Smiley*, 798 So. 2d at 589 (¶20).

## CONCLUSION

19

¶46. To summarize our discussion of the *Barker* factors, the length of the delay is presumptively prejudicial, and the reasons for the delay weigh in favor of May—though only slightly because significant delays are also attributable to May and his trial counsel. May's demand for a speedy trial also weighs in his favor—but only slightly because he waited more than a year before he asserted his right and then, through counsel, repeatedly requested continuances. Finally, the absence of any actual prejudice weighs heavily against May.

¶47. *Smiley*, *supra*, was another case in which the first three factors all weighed in favor of the defendant but the fourth weighed heavily in favor of the State. First, the delay of twenty-seven months in that case was presumptively prejudicial. *Smiley*, 798 So. 2d at 588 (¶¶12-13). Second, the State failed to show "good cause for the delay in bringing Smiley to trial." *Id.* at (¶15). Indeed, this Court took the "opportunity to chastise the State for . . . the absence of good cause," stating that "good cause" was "[n]otably absent." *Id.* at 589 (¶21). Third, Smiley made two pro se demands for a speedy trial and later filed two motions to dismiss on that ground. *Id.* at (¶¶17-18). Nonetheless, we held that Smiley's "fail[ure] to demonstrate any prejudice whatsoever" "weigh[ed] heavily against [him] and in favor of the State." *Id.* at 589 (¶20). We then concluded: "Under the totality of the *Barker* factors, weighed and considered together, we hold that the balance is struck in favor of the State. There is no merit to Smiley's claim of denial of a constitutional right to a speedy trial." *Id.*

¶48. The balance of the *Barker* factors in this case is comparable. We acknowledge that the overall delay in this case is considerably longer than in *Smiley*, but the second and third factors more clearly favored Smiley than May. Moreover, as in *Smiley*, May has "failed to

20

demonstrate any prejudice whatsoever." *Id.* As in *Smiley*, we conclude that "the totality of the *Barker* factors, weighed and considered together, . . . favor . . . the State." *Id.*

¶49.    *Smiley* is consistent with decisions of our Supreme Court. For example, in *Flora*, *supra*, the delay between arrest and trial exceeded two years, and the Supreme Court held that the second and third factors also favored the defendant. *Flora*, 925 So. 2d at 815-18 (¶¶62-67). However, the Court held that "no actual prejudice existed," and, "[u]nder the totality of the circumstances, and upon examination and analysis of the *Barker* factors," the defendant's "constitutional right to a speedy trial was not violated." *Id.* at 818-19 (¶69). Similarly, in *Manix v. State*, 895 So. 2d 167 (Miss. 2005), the delay from indictment to trial was more than four years, and the Supreme Court held that the second and third factors also favored the defendant, if only slightly. *See id.* at 172, 175-76 (¶¶4, 16-21). However, the Court then held that the defendant "failed to prove any actual prejudice" and that the "absence of actual prejudice" "overwhelmed" the other *Barker* factors. *Id.* at 177 (¶¶23-24). Therefore, the Court found no violation of the right to a speedy trial. *Id.*[8]

¶50.    Consistent with *Flora* and *Manix*, the absence of any prejudice to May's defense weighs heavily in favor of the State and outweighs the other *Barker* factors. Therefore, the trial court properly denied May's motion to dismiss the indictment.

¶51.    **AFFIRMED.**

    **BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL,**

---

[8] *See also Reed*, 191 So. 3d at 141-42 (¶21) (finding no violation in the absence of actual prejudice, although twenty months elapsed between arrest and trial and the second and third *Barker* factors both slightly favored the defendant); *McCain v. State*, 81 So. 3d 1130, 1135-36 (¶¶17-21) (Miss. Ct. App. 2011) (same), *aff'd*, 81 So. 3d 1055 (Miss. 2012).

**LAWRENCE AND C. WILSON, JJ., CONCUR. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.**

**McCARTY, J., DISSENTING:**

¶52. Because the State violated David May's guaranteed right to a speedy trial under any calculation, I must respectfully dissent. Five years and three months passed between the time May was arrested and when he was finally brought to trial. Of this delay, a back-breaking 1,081 days—or just shy of three years—are attributable to the State.[9] A delay of this magnitude warrants automatic reversal.

¶53. As the majority opinion recounts, May sought several continuances. However, the lion's share of the delays were attributable to the State.[10] The majority finds that "[t]he

---

[9] The dates used to calculate the length of delay are as follows:

| Date | Length of Delay |
| --- | --- |
| May's indictment to his first motion for a continuance | 36 |
| Docket congestion on November 14, 2013 to next trial date on May 18, 2015 | 562 |
| Trial on May 18, 2015 rescheduled for October 3, 2016 | 152 |
| Trial set for October 3, 2016 rescheduled due to unspecified reasons | 205 |
| Court unavailable on April 25, 2017 | 126 |

[10] The trial court did not hold the delay between the arrest and indictment against the State. Because May failed to address the issue in his brief, I excluded it from my speedy-trial calculation. That said, I do feel the need to address the trial court's reasoning. The reasons for the delay were an overcrowded docket and difficulty obtaining the victim's medical records. Crowded courts weigh against the State as it is the State's duty to bring a defendant to trial. Obtaining evidence is a burden that goes along with this duty. The State is responsible for obtaining its evidence, and any delay as a result should be heavily weighed against the State. In this day and age it is not difficult to obtain medical records. These are

22

record does not provide any good cause for the near seventeen-month delay between December 2013 to April 30, 2015." Maj. Op. ¶26. This *alone* should satisfy the statute's requirement for dismissal.

¶54.    The trial court was unavailable on the trial date set for April 25, 2017. Generally, court unavailability for reasons such as docket congestion will weigh against the State, although not heavily. *Barker v. Wingo*, 407 U.S. 514, 531 (1972). Here, the record states that the trial court was unavailable but fails to provide further explanation. Unexplained delays weigh heavily against the State. *Rowsey v. State*, 188 So. 3d 486, 494 (¶23) (Miss. 2015).

¶55.     The majority goes on to hold that the eleven-month delay (due to a "coast event") only weighed "slightly in favor of May and slightly against the State." Maj. Op. ¶32. I respectfully disagree. There was no actual reason given by the State for the delay—and even if it were, it is not an overcrowded docket and therefore should not be weighted equally. Rather, this delay should weigh heavily against the State.

¶56.    When discussing the fourth factor, prejudice, the majority finds that "the absence of any prejudice to May's defense weighs heavily in favor of the State and outweighs any of the *Barker* factors. Therefore, the trial court properly denied May's motion to dismiss this indictment." Maj. Op. ¶50. The majority seems to have the view that actual prejudice is required to establish a speedy trial violation. This reasoning is too shallow of a view to take—and one that the Supreme Court rejected over forty-five years ago.

routine tasks that all lawyers can be expected to perform with relative ease. In different circumstances this could very well be included in a speedy-trial calculation.

23

¶57.    In *Moore v. Arizona*, 414 U.S. 25, 25 (1973), a state supreme court held that a defendant must show actual prejudice to establish a speedy trial violation. 414 U.S. 25, 25 (1973). Upon review, the United States Supreme Court found this to be a misinterpretation of *Barker*. *Id*. The Supreme Court held that no one factor alone is dispositive "and expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial." *Id*. at 26 (citing *Barker*, 407 U.S. at 533).

¶58.    Further, "when the length of the delay is presumptively prejudicial, the burden shifts to the prosecution to produce evidence justifying the delay." *Bateman v. State*, 125 So. 3d 616, 629 (¶43) (Miss. 2013). As the majority notes, the delay of over five years in the case at hand is presumptively prejudicial. Maj. Op. ¶22; *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989) (holding that an eight-month delay is presumptively prejudicial). Because prejudice is presumed in a delay so tremendous, the defendant does not have to show actual prejudice.

¶59.    Even though prejudice is presumed and the burden is no longer on May, prejudice still exists in this case. May was incarcerated, which should be inherently prejudicial. "Lengthy exposure to [the overcrowded and generally deplorable] conditions [of local jails] has a destructive effect on human character and makes the rehabilitation of the individual offender much more difficult." *Barker*, 407 U.S. at 512.

¶60.    The right to a speedy trial shields not just the individual but also society as well. Delayed trials result in a large backlog of cases which in turn enable defendants to negotiate more effectively and otherwise manipulate the system. *Id.* Furthermore, defendants released

24

on bond are given ample time to commit other crimes. *Id.* It is for this reason that Mississippi state law provides that "all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." Miss. Code Ann. § 99-17-1 (Rev. 2014). A defendant not brought to trial within this time frame, unless good cause shown, is entitled to dismissal of the charges against him. *Id.*; *Dies v. State*, 926 So. 2d 910, 914 (¶7) (Miss. 2006). As the majority points out, May did not invoke the state statute. Yet all the 270 day law does is illustrate and define the right to a speedy trial.

¶61. The right to a speedy trial is one of the cornerstones of our freedoms as Americans. "The history of the right to a speedy trial and its reception in this country clearly establish that it is one of the most basic rights preserved by our Constitution." *Klopfer v. State of N.C*, 386 U.S. 213, 226 (1967). As the United States Supreme Court explained, the right to a speedy trial can be traced to "the very foundation of our English law heritage"—back to the Magna Carta, written over 800 years ago. *Id.* at 223.

¶62. From that ancient beginning it traveled to the colonies, where at the birth of our country "the Virginia Declaration of Rights of 1776 provided 'a man hath a right to a speedy trial.'" *Id.* at 225. The Court acknowledged that even at "this early period in our history," the right was already considered fundamental. *Id.*

¶63. We must not let this bright light dim after centuries of precedent. It should certainly not be doused given the three years of delay in this case. This is not a close decision—the only result under the Constitution is to reverse.

¶64. For these reasons that I must respectfully dissent.

**McDONALD, J., JOINS THIS OPINION.**